2012 Ark. 89

**Michelle Anne BROWN, Appellant**

v.

**Vernon Paul BROWN, Appellee.**

No. 11–1129.

Supreme Court of Arkansas.

March 1, 2012.

Andrew Mikael Taylor and Tasha Chloe Sossamon Taylor, Little Rock, for appellant.

Alanna Martinsky Fairrell, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

The issue in this case is whether the circuit court erred in denying appellant Michelle Brown's motion to modify the visitation of appellee Vernon Brown based on her desire to continue nursing her child, which she contends is in the child's best interest. Specifically, she asserts that the circuit court erred in dismissing her motion because a material change in circumstances has occurred, in that the parties' now twenty-six-month-old daughter wants to continue to breast-feed past the original eighteen-month period contemplated in the divorce decree. We affirm the circuit court's denial of the motion.

On December 25, 2008, Michelle Brown and Vernon Brown were married. They separated on or about October 22, 2009, while Michelle was pregnant. On December 26, 2009, she gave birth to a daughter. On August 10, 2010, Vernon filed a first amended complaint for absolute divorce. On October 21, 2010, the circuit court held a hearing on the matter, at which time the parties stated that they had reached an agreement on visitation. The ₂agreement was that Michelle would be granted custody of their daughter and that until their daughter reached eighteen months, Vernon would have visitation privileges from 4:00 p.m. until 8:00 p.m. every Tuesday and Thursday, as well as on every other Friday, Saturday, and Sunday for the same time period.

This limited visitation schedule was agreed upon by the parties in order to accommodate Michelle's nursing of the child.[1] The parties also agreed that once their daughter reached eighteen months of age, they would adhere to the standard visitation schedule of five weeks in the summer, alternating weekends, and alternating holidays. At the hearing, the circuit court questioned Michelle and Vernon about whether they understood and agreed to the terms of the visitation agreement. Both parties stated that they understood the terms of the agreement and that they knew they would be bound by it. The circuit court accepted the agreement and

---

1. Apparently, it is undisputed that Michelle is unable to utilize a breast pump.

included the visitation terms in the subsequent divorce decree filed on November 8, 2010.

At the time of the child's eighteen-month check-up, around June 26, 2011, she was still aggressively nursing six times a day. At some point in mid-July, which was well into Vernon's scheduled summer visitation with the child, Michelle contacted Pamela McArthur Elliot, a lactation consultant who had visited with her once immediately after the child was born, about a weaning schedule. During the time that Michelle was waiting to hear back from Elliot, Michelle and Vernon attempted to work out a weaning schedule themselves. The parties first agreed that they would cut back on the number of times the child nursed each day to once every twenty-four hours. This schedule continued for about a week, and then the parties agreed to reduce the nursing schedule to once every forty-eight hours. After the parties had begun the once-every-forty-eight-hours nursing schedule, Michelle spoke with Elliot, who recommended that she continue to nurse the child at least once nightly for up to two years and beyond, or as long as the child and Michelle desired to nurse. After receiving Elliot's recommendation, Michelle informed Vernon that she had spoken with Elliot and that they must return to the schedule of breast-feeding at least once every twenty-four hours.

Michelle and Vernon failed to work out a visitation schedule amicably, and on July 28, 2011, Michelle moved to modify visitation for the following reasons: (1) that she was still breast-feeding the minor child and should continue to do so through two years old as suggested by the World Health Organization and American Academy of Pediatricians; (2) that the parties had first agreed that the minor child would be allowed to breast-feed nightly during Vernon's visitation and orally agreed to

comply with the recommendations of Elliot; and (3) that Vernon had then refused to comply with Elliot's recommendations. Michelle asserted that it was in the child's best interest for the court to order that breast-feeding continue in accordance with Elliot's recommendations. She requested that the court modify visitation and "order breast feeding for the minor child up to two years."

On August 4, 2011, the circuit court held a hearing on Michelle's motion to modify visitation. Michelle, Elliot, and Vernon all testified at the hearing. At the close of Michelle's testimony, counsel for Vernon orally moved to dismiss Michelle's motion for failure to prove a material change in circumstances. Counsel for Michelle retorted that the change in circumstances was that both parties had anticipated that the child would be weaned at eighteen months, but that did not occur. The circuit court, however, found that no material change in circumstances had occurred and ruled that the visitation would go forward in accordance with the standard visitation schedule set forth in the divorce decree. The court then entered a written order dismissing Michelle's motion to modify visitation on August 15, 2011. Michelle appealed the order and filed a motion for emergency temporary relief pending the outcome of the appeal, which this court denied on November 17, 2011. Michelle next filed a motion to expedite this appeal, which this court granted on December 1, 2011.

We first address the claim of mootness raised by Vernon in his brief on appeal. He raises the argument that Michelle's appeal is moot because she only asked the circuit court to modify Vernon's visitation until their child reached the age of two, and their daughter turned two on December 26, 2011. In response, Michelle claims that her appeal is not moot because (1) in

addition to requesting that the court modify the visitation to accommodate breast-feeding for up to two years, she also asked the court to modify the visitation schedule in accordance with the lactation consultant's recommendation that the child breast feed on a nightly basis for two years and beyond; and (2) that even if this court were to decide that the issue presented in the instant appeal was moot, there is the possibility that she could go back to the circuit court and file another motion requesting modification with a broader request for relief. Thus, she maintains, the issue is capable of repetition and would evade review.

As a general rule, the court will not review an issue that is moot. *Mountain Pure, LLC v. Little Rock Wastewater Utility*, 2011 Ark. 258, 383 S.W.3d 347. To do so would be to render an advisory opinion, which this court will not do. *Id.* We have generally held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.* In other words, a moot case presents no justiciable issue for determination by the court. *Id.* This court has recognized two exceptions to the mootness doctrine, one of which involves issues which are capable of repetition, yet because of their circumstances evade review. *Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001).

In Michelle's motion to modify visitation, she said that the visitation should be modified, in part, because she was "still breast feeding the minor child, and should continue through two years old as suggested by the World Health Organization and American Academy of Pediatricians." She also contended that breast-feeding should continue "in accordance with the plan of Pam McArthur [Elliot] for the benefit of the minor child." In her affidavit submitted along with Michelle's motion for modification of visitation, Elliot recommended continued breast-feeding for at least twenty-four months and beyond, as long as mutually desired by Michelle and the child. However, Michelle requested in her prayer for relief only that the circuit court "order breast feeding for the minor child up to two years."

It is clear to this court that Michelle merely requested that the circuit court modify visitation until the child was two years old, and the child is now over twenty-six months old. And yet Michelle is correct that this issue potentially could arise again between the parties if a longer term for nursing is sought. Furthermore, the record before us is unclear as to the current status of the breast-feeding. For example, it is possible that Vernon has allowed Michelle to continue breast-feeding the child during his scheduled visitation irrespective of the circuit court's order of August 15, 2011, that there had been no material change of circumstances. We just do not know. As a result, it would be impossible for this court to decide conclusively that the issue presented in this appeal is moot. Accordingly, we will address the merits of the appeal.

Michelle claims that the circuit court erred in finding that she failed to prove that a material change in circumstances had occurred due to the child's desire to nurse beyond two years. She maintains that the change in circumstances is that neither she nor Vernon anticipated that their child would still desire to nurse so aggressively at eighteen months of age. She contends that both parties anticipated that their daughter would be properly weaned by the time she reached the age of eighteen months; however, neither party took the appropriate steps to ensure that outcome. She requested that the circuit court modify the parties' visitation schedule to permit her to breast-feed the child

once nightly to accommodate the changed circumstances while Vernon is exercising his visitation. She contends that the circuit court erred in failing to grant this modification.

In response, Vernon alleges that there has been no material change in circumstances because both parties were aware at the time the divorce decree was entered that their daughter might desire to continue breast-feeding past the age of eighteen months; that Michelle cannot allege a change in circumstances based on a change that she has created; and, finally, that the only thing that has changed since the entry of the divorce decree is Michelle's attitude toward visitation.

This court recently announced the standard of review applicable to child-visitation cases:

> In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *E.g., Hass v. Hass,* 80 Ark. App. 408, 97 S.W.3d 424 (2003). We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *See, e.g., Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002).

A circuit court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not known to it at the time of the initial order. *E.g., Martin v. Scharbor,* 95 Ark.App. 52, 233 S.W.3d 689 (2006). Although visitation is always modifiable, to promote stability and continuity for the children and to discourage repeated litigation of the same issues, courts require more rigid standards for modification than for initial determinations. *E.g., Meins v. Meins,* 93 Ark.App. 292, 218 S.W.3d 366 (2005). Thus, the party seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants such a change. *E.g., Hass, supra.*

The primary consideration regarding visitation is the best interest of the child. *Id.* Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.* Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.*

*Baber v. Baber,* 2011 Ark. 40, 9–10, 378 S.W.3d 699, 705.

This court has further said, in the context of child-custody modification, that an appellant "cannot use the circumstances he [or she] created as grounds to modify custody." *Jones v. Jones,* 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996). In *Jones,* Mrs. Jones appealed the decision of the circuit court ordering a change in custody where the court had relied, in part, on Dr. Jones's recent remarriage to support its finding that a material change in circumstances had occurred. *Id.* at 489, 931 S.W.2d at 771. This court observed that Dr. Jones married his present wife five months after the parties' divorce and that he admitted at trial that their relationship predated the parties' divorce. *Id.* at 490, 931 S.W.2d at 771. This court also noted that Dr. Jones admitted at oral argument that, at the time of the original divorce decree, it was within his reasonable con-

templation to remarry. *Id.* We concluded that Dr. Jones could not use the circumstances he later created as grounds to modify custody and held that "[g]iven his awareness of the circumstances at the time he voluntarily entered into the agreement to award custody ... to Ms. Jones, we cannot agree that his remarriage constituted a material change in circumstances." *Id.* at 490, 931 S.W.2d at 772.

Along this same line, in *Taylor v. Taylor*, this court was faced with a similar argument. 353 Ark. 69, 110 S.W.3d 731 (2003). There, the circuit court had based its modification of custody, in part, on appellee's argument that he had a better educational background and was more financially secure than the appellant. *Id.* at 78, 110 S.W.3d at 736. This court cited *Jones* with approval and held that appellee's awareness of both his superior financial situation and the respective parties' educational backgrounds at the time he voluntarily entered into the custody agreement, which resulted in the divorce decree, precluded a subsequent finding that a material change in circumstances has occurred. *Id.* at 79, 110 S.W.3d at 737.

There is also the case of *Stellpflug v. Stellpflug*, where the court of appeals held that the circuit court erred in modifying the appellant's visitation because "the only change that occurred in this case was appellee's attitude regarding summer visitation." 70 Ark.App. 88, 93, 14 S.W.3d 536, 539 (2000). The court of appeals acknowledged that it was sympathetic to the difficulties alleged by the appellee but found that the appellee had simply failed to meet her burden because she "merely testified that her children expressed a desire to see her during the summer, that her youngest daughter gets homesick, and that she has financial difficulty exercising her summer visitation rights." *Id.* The court of appeals thus concluded that appellee failed to cite any authority to show that these difficulties constitute a material change in circumstances warranting a modification of the visitation agreement and reversed the order of the circuit court modifying visitation. *Id.*

In the case before us, it is undisputed that both Michelle and Vernon agreed that regular visitation would begin when their daughter reached eighteen months of age and that this agreement was accepted by the circuit court and included in the divorce decree. Vernon testified at the hearing that it was his understanding that Michelle was supposed to have their daughter weaned by the time she was eighteen months old and that he did not know the child was still nursing until her eighteen-month check-up. Michelle admitted that she did not intend to nurse the child past eighteen months but that the child was an aggressive nurser who was nursing six times a day when she turned eighteen months old. She testified that she did make some attempt to wean the child by occasionally asking friends or Vernon to watch her for an extended period of time but that "when she's with me, she's just an aggressor so I nurse her six times a day."

After a de novo review of the record, we hold that the circuit court did not clearly err in finding that Michelle failed to prove a material change in circumstances had occurred that warranted a modification in visitation. In making our decision, it is important to this court that it was certainly within the contemplation of the parties at the time the divorce decree was entered that the child conceivably might desire to continue breast-feeding beyond eighteen months. The record reveals that Michelle was in contact with Elliot, the lactation consultant, immediately after the child's birth, and Elliot testified that she informed Michelle at that time that the

American Academy of Pediatricians recommended exclusive breast-feeding for six months and at least one year beyond. Elliot also testified that although she did not specifically inform Michelle at that time that it was her recommendation that she breast-feed for two years, that information was in the materials she provided to her. Furthermore, Michelle testified that she had previously breast-fed her two other children and, presumably, she had successfully weaned both of those children. Michelle also had ample time between the time that the child was born and the entry of the divorce decree, and then before the child turned eighteen months, to contact Elliot with any questions she had about the breast-feeding or weaning process. This she failed to do.

■ Although this court's opinions in *Jones* and *Taylor* were decided in the context of child-custody cases, the test for determining whether modification is warranted based on whether a material change in circumstances has occurred is the same. In the instant case, Michelle was aware that her child *could* desire to breast-feed past eighteen months and was aware of the breast-feeding and weaning process at the time that she voluntarily entered into the visitation agreement, as part of the divorce decree. She agreed, however, to that time frame. Now she has changed her mind. This is not enough for this court to find that a material change in circumstances has transpired. In short, Michelle should not be permitted to allege a material change in circumstances that she herself has created. *See Jones, supra; Taylor, supra; see also* Stellpflug, *supra*.

■ The parties also include arguments concerning the best interest of the child. The circuit court determined that Michelle Brown failed to prove that a material change in circumstances had occurred and dismissed the action. The court, however, made no finding on whether a modification of visitation was in the best interest of the child and was not required to do so in light of the fact that it concluded that there was no material change in circumstances warranting a modification of visitation. *See, e.g., Lewellyn v. Lewellyn,* 351 Ark. 346, 93 S.W.3d 681 (2002) (stating that before the circuit court can order a modification of custody, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a modification of custody is in the best interest of the child). As this court has concluded that the circuit court did not clearly err in finding that Michelle failed to prove a material change in circumstances, there is no need to address the argument that any such modification in visitation would be in the best interest of the child.

Affirmed.