

# SUPREME COURT OF ARKANSAS

No. CV–14–192

| | |
|---|---|
| JESSICA FOUST<br><br>APPELLANT<br><br>V.<br><br><br>MARIA MONTEZ-TORRES<br>APPELLEE | **Opinion Delivered** February 26, 2015<br><br>APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT [NO. DR–2013–72]<br><br>HONORABLE PHILIP SMITH, JUDGE<br><br><u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Jessica Foust appeals an order entered by the Jackson County Circuit Court denying her request for visitation with M.F., the minor child of appellee Maria Montez–Torres. For reversal, Foust argues that the circuit court erred in finding that she stood in loco parentis to M.F. for only the first three years of the child's life rather than for the entirety of it and in finding that it was not in M.F.'s best interest to have visitation with her. We affirm because at the time Foust filed her complaint for custody and visitation, she lacked standing to bring the action.

In 1994, Jessica Foust and Maria Montez–Torres began a romantic relationship. They lived together as a family unit with Montez–Torres's two biological children. In 2005, Montez–Torres had a brief relationship with a man and conceived a child, M.F., who was born in 2006. Foust and Montez–Torres ended their relationship in 2009. Following their separation, Montez–Torres and M.F. moved out of the home, and the parties established a

SLIP OPINION

schedule allowing Foust to visit M.F. However, in February 2013, Montez-Torres ended this arrangement. On March 27, 2013, Foust filed a complaint in the Jackson County Circuit Court seeking custody, or in the alternative, visitation with the child.

At the hearing on her complaint, Foust testified that she had been present for M.F.'s birth and had lived in the home with the child from that time until the parties' separation in 2009. Additionally, Foust testified that Montez-Torres gave the child Foust's last name. Montez-Torres also testified during the hearing. She stated that, following their separation, she learned that Foust was exposing M.F. to Foust's romantic partners during visitation times. Montez-Torres testified that she became concerned about this and voiced her objection to Foust. Yet, Foust continued to host her romantic partners overnight during visitation with M.F.

Eventually, Foust began a romantic relationship with Christy Eddington. Sometime afterward, Eddington and Montez-Torres exchanged name-calling, both in person and via text messages. As a result, Montez-Torres expressed to Foust that she did not want M.F. to be around Eddington. Nonetheless, Foust proceeded to have visitation with M.F. on a night when Eddington was also at her home. Montez-Torres discovered that Eddington was at the house and called Foust at approximately 4:30 in the morning. Foust acknowledged that Eddington was there and claimed that they were watching movies in the bedroom. Foust also admitted that M.F. was sleeping in the same room. Montez-Torres then traveled to Foust's house and retrieved M.F. After that incident, Montez-Torres declined to allow Foust to have further visitation with M.F.

Montez-Torres testified that despite her request that Foust not contact M.F., Foust continued to do so. For instance, Foust and Eddington approached M.F. and her babysitter while shopping, and Foust attempted to embrace and talk to M.F. despite the babysitter's admonitions. Foust also sent flowers to M.F. at school on her birthday with a card indicating the flowers were from Foust and Eddington. At the conclusion of the hearing, the circuit court found that Foust stood in loco parentis to M.F. for the first three years of M.F.'s life but that it was not in M.F.'s best interest to continue visitation with her. Foust filed a timely notice of appeal from that order.

For her first point on appeal, Foust claims that the circuit court erred in finding that she stood in loco parentis to M.F. for only the first three years, rather than the entirety, of the child's life. This court has traditionally reviewed matters that sound in equity de novo on the record with respect to fact questions and legal questions. *Daniel v. Spivey*, 2012 Ark. 39, 386 S.W.3d 424. We will not reverse a finding made by the circuit court unless it is clearly erroneous. *Id.* We have further stated that a circuit court's finding is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Hunt v. Perry*, 357 Ark. 224, 162 S.W.3d 891 (2004). This deference to the circuit court is even greater in cases involving child custody or visitation, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Alphin v. Alphin*, 364 Ark.



332, 219 S.W.3d 160 (2005).

Foust argues that the circuit court erred in finding that she did not stand in loco parentis for M.F.'s entire life because Montez–Torres could not unilaterally terminate Foust's parental relationship with M.F. The circuit court's conclusion that Foust did not stand in loco parentis to M.F. for the child's whole life is not clearly erroneous.[1] We have held that the in loco parentis relationship "may be abrogated at will by either the person assuming the parental duties or the child. Thus, the relationship is a temporary one, unlike that of adoption." *Babb v. Matlock*, 340 Ark. 263, 267, 9 S.W.3d 508, 510 (2000). Moreover, we have squarely held that the in loco parentis relationship terminates once the surrogate parent "has established his home at another place, and indicated his purpose thereby to no longer treat them as part of his family." *Kempson v. Goss*, 69 Ark. 451, 64 S.W. 224 (1901). We have held that the in loco parentis status requires a nonparent to "fully put himself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship" and to actually discharge those obligations, a standard which cannot be met where the nonparent and child have not lived in the same house for over three years. *Daniel v. Spivey*, 2012 Ark. 39 at 6, 386 S.W.3d at 428. Foust's argument also ignores that Montez–Torres, by virtue of her status as M.F.'s natural parent, has a fundamental right to direct and control the upbringing of M.F. Indeed, "the interests of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests

---

[1]We do not review the circuit court's finding that Foust stood in loco parentis for the first three years of M.F.'s life.

recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000).

Additionally, we have held that a party standing in loco parentis may terminate the relationship and any corresponding duty of support for the child. *Kempson*, 69 Ark. 451, 64 S.W. 224. It would be an anomaly, indeed, for a nonparent to have the ability to unilaterally sever the in loco parentis relationship without affording the natural parent the same right. Thus, in our view, the natural parent must also be permitted to terminate the relationship at will, lest the law improperly prioritize the rights of the nonparent above that of the natural parent. As the Utah Supreme Court has explained, "Such an inequitable result, which would prioritize the rights of the surrogate parent over the needs of the child, demonstrates that the in loco parentis doctrine does not contemplate a perpetual grant of rights and is, in fact, ill-suited to convey such rights." *Jones v. Barlow*, 154 P.3d 808, 814 (Utah 2007). In short, because Foust had not lived with the child for over three years, Foust could not stand in loco parentis to M.F. Accordingly, the circuit court did not clearly err in holding that Foust was not in loco parentis for the entirety of M.F.'s life.

Having concluded that Foust did not stand in loco parentis to M.F., we need not reach her contention that the circuit court erred in finding that permitting visitation with her was not in the child's best interest. Before the circuit court, Montez-Torres argued that Foust lacked standing to bring this action because she was not acting in loco parentis at the time she filed the complaint.[2] We agree that, because Foust did not stand in loco parentis when she

---

[2]The dissent confounds our law on appellate standards and review in suggesting that we are precluded from addressing Montez-Torres's argument on standing simply because she has not urged the argument on appeal. In support of its position, the dissent cites *Teris, LLC*

5

filed her action, she did not have standing to seek visitation with the child.

Other states considering this issue have held similarly. For example, in *Jones v. Barlow, supra,* which we previously cited, the Utah Supreme Court examined a case where a nonparent sought visitation with a child under the doctrine of in loco parentis. There, as here, the natural parent moved with the child to a separate residence following the end of the parties' relationship. Eventually, the natural parent ended all contact between the nonparent and the child, and the nonparent petitioned for visitation. The Utah Supreme Court held that the nonparent lacked standing to bring her action because she did not stand in loco parentis to the child when the natural parent had moved to another residence and refused to allow the nonparent to interact with the child. Accordingly, the Utah court held, "The common law doctrine of in loco parentis does not convey perpetual rights that survive the termination of the parent-like relationship." *Jones v. Barlow*, 154 P.3d at 819.

---

*v. Chandler*, 375 Ark. 70, 289 S.W.3d 63 (2008), but that case is inapposite because it involved an *appellant's* failure to develop an argument rather than an appellee. Indeed, it is axiomatic that Montez–Torres, as the appellee, had no burden to make any arguments or raise any issues on appeal. This court has been clear that on appeal, we look to the correctness of the judgment, whatever may have been the circuit court's reason for granting it. *Office of Child Support Enforcement v. Wood*, 373 Ark. 595, 285 S.W.3d 599 (2008). The failure of the appellee to argue the point or cite authority on it is immaterial. *Miller v. Dyer*, 243 Ark. 981, 423 S.W.2d 275 (1968). Undoubtedly, we may affirm a circuit court even if an appellee wholly fails to file a brief. This is because the burden is always on the appellant to demonstrate error in the circuit court's decree. *Bratton v. Gunn*, 300 Ark. 140, 777 S.W.2d 219 (1989). Additionally, contrary to the dissent's assertion, our review is not limited to those grounds elucidated by the circuit court in its opinion, but rather, we may affirm for any reason that has been developed in the record. *Yanmar Co. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439; *Arkansas Diagnostic Ctr., P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884 (2007). The question of Foust's standing was raised and developed before the circuit court. Therefore, this court acts well within its authority to address the issue.

The Texas Court of Appeals has agreed that a nonparent lacks standing to pursue a cause of action for custody or visitation where the nonparent no longer resides with the child and is only exercising visitation. *Coons-Andersen v. Andersen*, 104 S.W.3d 630 (Tex. App. 2003). In *Coons-Anderson*, the parties lived together as romantic partners. During that time, Anderson conceived a child through artificial insemination. After the parties separated, Anderson moved out of the residence with the child but allowed Coons-Anderson to continue to have periodic visitation with the child. Eventually, Anderson chose to terminate the relationship between the child and Coons-Anderson. Coons-Anderson filed an action seeking visitation with the child, and the Texas Court of Appeals held that she lacked standing to maintain the lawsuit, stating, "The cases relied upon by appellant to assert that someone who was once in loco parentis may maintain a custody lawsuit against a child's parent simply do not stand for that proposition, and we reject the notion that appellant's possible status as a person in loco parentis continued past the time the child moved out of her home." *Id*. at 636. The Texas court also refused to recognize standing by virtue of Coons-Andersons's periodic visitation, stating,

> Likewise, we conclude appellant was not in loco parentis because of the occasional visitation she had with the child after she and appellee separated. Texas courts have never applied the common law doctrine of in loco parentis to grant custodial or visitation rights to a non-parent, against the parent's wishes, when the parent maintains actual custody of the child. We decline to do so now.

*Id*. at 635. Thus, a nonparent has no standing to petition for custody or visitation where the nonparent does not stand in loco parentis to the child at the time of the petition. *Accord, D.G. v. D.B.*, 91 A.3d 706 (Pa. 2014) (holding that a grandmother lacked standing because

she was not in loco parentis where she did not live with child); *Worrell v. Elkhart Cnty. Office of Family & Children*, 704 N.E.2d 1027 (Ind. 1998) (holding that foster-parent status was temporary and that foster parents lacked standing to petition for custody or visitation once a child no longer resided with them).

In short, we decline to adopt a rule allow a nonparent to have standing to petition for custody or visitation where the party does not stand in loco parentis. Such a rule would unnecessarily and impermissibly intrude on the rights of a natural parent to make decisions for his or her child by allowing third parties to invoke State encroachment when the nonparent does not hold the rights or responsibilities of a parent. We have recognized that the Fourteenth Amendment includes "the liberty right of a parent to have and raise children." *Linder v. Linder*, 348 Ark. 322, 342, 72 S.W.3d 841, 851 (2002). Thus, "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68–69. The State may not "infringe on the fundamental right of parents to make child-rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73.

Accordingly, because Foust did not stand in loco parentis to M.F. at the time she filed her action, the circuit court reached the right result in denying Foust's request for custody and visitation because she lacked standing to bring the action. As we have often said, we will affirm the circuit court where it reaches the right result, even though it may have announced

a different reason. *City of Marion v. City of W. Memphis*, 2012 Ark. 384, 423 S.W.3d 594.

Affirmed.

HANNAH, C.J., and DANIELSON, J., concur in part; dissent in part.

BAKER and HART, JJ., concur.

**PAUL E. DANIELSON, Justice, concurring in part and dissenting in part.** I concur in the majority's disposition but write separately because I would affirm the circuit court's finding that it was not in M.F.'s best interest to have visitation with Appellant Jessica Foust.

The majority opinion needlessly engages in an analysis of whether Foust stood in loco parentis to M.F. and then erroneously concludes as follows:

> In short, because Foust had not lived with the child for over three years, Foust could not stand in loco parentis to M.F. Accordingly, the circuit court did not clearly err in holding that Foust was not in loco parentis for the entirety of M.F.'s life.
>
> Having concluded that Foust did not stand in loco parentis to M.F., we need not reach her contention that the circuit court erred in finding that permitting visitation with her was not in the child's best interest.

What the majority wholly ignores is that the circuit court did not deny Foust's request for visitation on the basis that she did not stand in loco parentis to M.F. for the entirety of the child's life. Quite to the contrary, the circuit court in its memorandum of decision specifically stated as follows:

> From the evidence, the court concludes the plaintiff has successfully demonstrated that she stood in loco parentis to [M.F.] during the first three years of the child's life. She lived in the same home, shared in the child's day-to-day care and activities, held herself out to be [M.F.]'s parent, generally acted in the place of a parent, and fully accepted the responsibilities of parenthood.

9

*In loco parentis standing having been established*, we turn to the best interest issue, which is more problematic.

(Emphasis added.) This finding was reaffirmed in the circuit court's order, which stated that Foust "successfully demonstrated that she stood in loco parentis to [M.F.] during the first three years of the child's life." But, the circuit court then found that Foust "has failed in her proof as to the best interest issue."

It is clear that the circuit court found that Foust stood in loco parentis to M.F. and that the circuit court then determined that it was not in the child's best interest to allow visitation. The fact that the circuit court's order qualified the in loco parentis status does not equate to a finding that visitation was denied on the basis that Foust was out of the home and, thus, could no longer stand in loco parentis to M.F.[1] But, in reframing the issue before it, the majority creates an opportunity to retreat from this court's holding in *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731, by limiting the status of in loco parentis to situations in which the person seeking visitation remains in the home with the child. Such a conclusion raises the

---

[1]The majority also improperly opines that "because Foust did not stand in loco parentis when she filed her action, she did not have standing to seek visitation." In so doing, the majority points to the fact that Montez-Torres raised a standing argument to the circuit court. What the majority does not say is that Montez-Torres in her brief to this court repeatedly states that the only issue in this case is whether visitation was in the best interest of M.F. The fact that the majority nevertheless addresses this argument completely disregards the well-established principle that we do not make a party's argument for him or her. *See, e.g., Teris, LLC v. Chandler*, 375 Ark. 70, 289 S.W.3d 63 (2008) It is completely unnecessary for the majority to engage in a convoluted analysis on an issue that is not even properly before us. I find it interesting that the majority's only response to my concurrence is a hollow accusation that I have confounded the law on appellate procedure. The only thing confounding about this case is the majority's complete refusal to analyze and decide an issue that is properly before us, namely, whether visitation was in the child's best interest.

question of why a person still residing in the home would ever need to assert in loco parentis status and obtain a court order allowing visitation. Under the majority's holding, a person would be required to seek a preemptive order of visitation. This conclusion is nonsensical.

Moreover, the majority's failure to even cite to our decision in *Bethany*, a case that is clearly on point, is disingenuous, particularly in light of the fact that the circuit court relied on that decision in finding that Foust stood in loco parentis to M.F. In choosing to just ignore the decision in *Bethany*, the majority has created an irreconcilable conflict in our law. If the point of this decision is to overrule *Bethany*, then the majority should explicitly say so. I simply cannot imagine the plight of practicing attorneys and circuit judges in light of the murky state of our law.

Although I do not agree with the majority's analysis, I do agree that the circuit court's order denying visitation should be affirmed. The circuit court had the benefit of hearing the witnesses' testimony and observing their demeanor in determining that it was not in M.F.'s best interest to allow visitation. This court has held that we review issues of child visitation under a de novo standard of review. *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* Thus, considering the fact that the circuit court was in the superior position to evaluate the credibility of witnesses and to determine the best interest of M.F., I would affirm its order

11



denying the petition for visitation.

HANNAH, C.J., joins.

**KAREN R. BAKER**, **Justice, concurring.** Although I wholeheartedly agree with the majority's decision to affirm the circuit court's finding that Foust did not stand in loco parentis to M.F. at the time of her petition for visitation—and I join it—I write separately because I conclude that Arkansas's statutory scheme does not allow a petition for visitation filed outside of an action for divorce, paternity, or guardianship.

In the present case, Foust filed a petition for visitation as an independent action; she did not filed her petition in conjunction with a complaint for divorce or guardianship, nor did she filed her petition in association with an action to establish paternity. For this reason, I conclude that Foust lacked standing under our statutes to bring her petition for visitation. In *Blackwood v. Floyd*, 342 Ark. 498, 29 S.W.3d 694 (2000), an ex-wife moved to be granted visitation with her former stepson. She had not petitioned for visitation in conjunction with the divorce proceeding, but instead waited until approximately 314 days after the divorce decree had been entered to assert that she had established a maternal relationship with the child and should be awarded visitation. She contended that she had a private agreement with the child's father, her ex-husband, to allow her to visit the child upon request, but that the father had denied her any visitation when differences arose between the parties after the divorce. *Blackwood*, 342 Ark. at 499, 29 S.W.3d at 695. The father moved to dismiss the ex-wife's motion, contending that ninety days had passed since the parties' divorce decree was entered and, under Rule 60(b) of the Arkansas Rules of Civil Procedure, she was barred from

seeking visitation rights or any other modification of the divorce decree. *Id.* The chancery court denied the motion to dismiss, treated the motion for visitation as a motion to modify the divorce decree, and stated that it had "continuing jurisdiction to decide matters involving child custody and visitation, the paramount consideration being the welfare and best interests of the child." *Id.* at 500, 29 S.W.3d at 696. This court reversed, holding that the chancery court did not have continuing jurisdiction to modify the divorce decree and award visitation after the expiration of the ninety-day period provided for in Rule 60. In rejecting the ex-wife's attempts to file a stand-alone visitation petition outside the context of a divorce proceeding, this court cited to several cases in which the courts heard evidence, and they granted or denied the right to custody or visitation at the time of the divorce. *Blackwood*, 342 Ark. at 502–03, 29 S.W.3d at 697 (citing *Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988); *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997); *Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989)). We determined that by not asserting any right to visitation with the child at the time of the divorce, the ex-wife had simply waited too long. *Id.* We found no basis for an independently filed petition for visitation.

Here we are faced with a similar circumstance in that Foust has filed a petition for visitation outside the context of a divorce, paternity, or guardianship action. See Ark. Code Ann. § 9-13-101 (providing for the award of custody to a parent in an action for divorce or upon petition of a grandparent intervening in a divorce action); Ark. Code Ann. § 9-10-113 (providing that when the parties are unmarried, a biological father may petition for visitation

13

after establishing paternity); Ark. Code Ann. § 28-65-203 (providing for certain persons to file a petition for guardianship) ; Ark. Code Ann. § 9-13-103 (providing for visitation rights of grandparents when the child is in the custody of a parent). She likewise contends that she had an agreement with Montez-Torres to allow her to visit M.F., but that Montez-Torres denied her access after a disagreement. Like the *Blackwood* court, I do not find a basis in our statutes for a petition for visitation absent a petition for divorce, paternity, or guardianship, and without a finding of in loco parentis status.

The majority does not address the circuit court's finding that Foust stood in loco parentis to M.F. during the first three years of M.F.'s life. On that point, I reiterate my opinion expressed in my dissent in *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731. This court must decline to create a nonexistent body of law regarding persons that the legislature has not identified as having rights to visitation. *Id.* at 24, 378 S.W.3d at 745 (Baker, J., dissenting). Our statutes are designed to protect the rights of fit parents to make decisions regarding the care and upbringing of their children. This court has no place infringing upon the rights of those parents or creating rights in persons who are not recognized by the legislature.

HART, J., joins.

*Robertson Law Firm, PLLC,* by: *Robert "Chris" Oswalt* and *Bonnie Robertson*, for appellant.

*Robert S. Tschiemer*, for appellee.