SLIP OPINION

Cite as 2015 Ark. App. 540

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV-15-48

| | | |
|---|---|---|
| ASHELY NEWBY | | **OPINION DELIVERED** OCTOBER 7, 2015 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. DR-2008-1036-5] |
| V. | | |
| | | HONORABLE XOLLIE DUNCAN, JUDGE |
| DAVID NEWBY | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

In this appeal of an order modifying visitation, Ashely Newby contends that the Benton County Circuit Court erred in its order filed October 17, 2014, claiming that (1) the court did not make findings of fact regarding any material change in circumstances; (2) passage of time per se does not constitute a material change in circumstances; (3) de novo review of the record does not support the finding of a material change in circumstances; and (4) modifying visitation is not in her child's best interest. We affirm.

I. *Statement of Facts*

The parties entered into a property-settlement and child-custody-and-support agreement on August 21, 2008, which was incorporated into the divorce decree on September 11, 2008, wherein Ashely was awarded primary custody of the parties' son, K.N., (DOB 3/26/2006), and appellee David Newby was ordered to pay $200 per month in child support. David was awarded visitation on Tuesday and Wednesday of each week, but not

overnight, and on alternate federal holidays.  The decree provides that "[a]dditional visitation can be agreed upon by both parties."

On June 18, 2014, David filed a petition for modification, claiming that a material change in circumstances had occurred.  The trial court modified the visitation after a hearing wherein Ashely testified that the child had pulmonary and immunological issues since birth.  She said that he had to carry an oxygen tank, he took breathing treatments, and she did not know if he would grow out of his health issues.  She said that she did not believe that David was capable of providing healthcare for their son because K.N. needed consistent medication, routine, sleep, and appointment-keeping.  She said that K.N. currently took pills, inhalants, and nasal sprays.  She said David was informed of doctors' appointments until a year ago, but because he never attended, she quit notifying him.  She claimed that she kept him informed of what the doctors said.  She said that she does not have concerns about the boy's healthcare safety while he is at David's mother Donna's house.

She said the child's football practice schedule was interfering with David's visitation, but she was willing to work around that.  She said that David's usual visitation was on Tuesdays from 3:30–5:30 p.m., but since football began, the practices started at 5:30 p.m., and it was her decision that David would not have visitation on that day.  She said that David could pick a different day to visit if he would communicate with her.  K.N. also had practice on Thursdays and games on Saturdays.  She testified that K.N. also participated in baseball and basketball.  She agreed that K.N. was physically able and capable of playing some fairly strenuous athletic activities with prior medication and pretreating, "if he's well."  She also

said that only David's mother could give K.N. medication, thus, allowing only overnights with David at Donna's house. She insisted that the child should be getting twelve hours of sleep at night. She admitted that the boy could take his medications at his father's house, but stated that David "had not chosen to do that." She admitted that her son had been deer hunting with her current husband. She said David works at bars on Thursday, Friday, and Saturday nights from 9 p.m. until 2 a.m. This was the same schedule as when they divorced.

She said that Defendant's Exhibit 1 (an agreement leading to the divorce settlement) states that overnight visitation would be readdressed on the boy's third birthday. She said that there was a time when overnight visits began and the child would stay at Donna's house every other weekend, but then "Donna and I discussed that that did not work for K.N.'s schedule, once he started school and she went back to work, and, so, then, we discontinued that every other weekend schedule." She admitted that David had a permanent residence and has had for a year.

David testified that he had given the child his medication and that the child was older and needed his father. He also stated that when Ashely was between husbands, he was able to see the child more often. He said that he went to the child's activities, which include football, but wanted more visitation than just to watch him at whatever practices he had. He denied that they agree on visitations—he said that Ashely tells him what it will be and when. He said the only time the child ever missed getting his medication was when the child was with him, and Ashely had told him the child could do it himself. He denied that he had been invited to the doctors' appointments. He said that he did not know which doctors the

3

child was seeing. He said that he had given the child breathing treatments and his medication, but he later stated that he had only administered the inhalers and had not administered a breathing treatment. He stated that he had not had the child for more than two hours in the month preceding the hearing. He claimed that he had asked Ashely for more predictable visitation, and she would not allow it. He said that the only way to obtain more visitation was for the court to tell her to provide it.

The trial court ordered that visitation should be modified. Paragraph 5 of the order states as follows:

> The Court does find that a material change of circumstance has occurred since the entry of the last order of this Court touching on visitation between David Newby and K.N. which justifies the modification of that order and does further find that modification of the prior order is in the best interest of the parties' child.

The trial court ordered that David should be entitled to reasonable access to K.N. and should have standard visitation. David was enjoined from cohabiting with any person to whom he was not married while having care of K.N. The court ordered that, for next six months, David should keep Ashely informed of any childcare arrangements during his visitation. This appeal timely followed.

## II. *Standard of Review*

The Arkansas Supreme Court stated in *Moix v. Moix*, 2013 Ark. 478, at 9, 430 S.W.3d 680, 685:

> In domestic relations cases, we review the evidence de novo and will not reverse the circuit court's findings unless they are clearly erroneous. *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159. We also give special deference to the circuit court's superior position in evaluating the witnesses, their testimony, and the child's best interest. *Id*. Because a circuit court maintains continuing jurisdiction over visitation, it may

4

modify or vacate a prior visitation order when it becomes aware of a material change in circumstances since the previous order. *Id.* The party seeking modification has the burden of demonstrating such a material change in circumstances. *Id.* With regard to visitation, the primary consideration is the best interest of the child. *Id.* Important factors for the court to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and relationship with siblings and other relatives. *Id.* We have held that fixing  visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.*

*Hackney v. Hackney*, 2015 Ark. App. 114, at 5, 456 S.W.3d 394, 397–98.

This court has stated as follows:

Where the circuit court fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the circuit court could have found a change in circumstances. *See* [*Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520] (citing *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988)).

*Preston v. Preston*, 2014 Ark. App. 58, at 2.

### III.  *Discussion*

Ashely argues that the circuit court stated that a material change existed, but did not explain its reasoning in its written order.  She contends that the sole basis for the modification was that time had passed, and the child was older.  Ashely argues that a material change in circumstances cannot be based on the mere passage of time.  We agree.

In *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999), this court held that a material change in circumstances had occurred when it coupled passage of time with other factors.  We held that the marriage of the father and the move of the mother, coupled with the passage of time and other factors permitted a reopening of the best-interest inquiry.  *Id.*

at 114, 986 S.W.2d at 107. In *McCoy v. Kincade*, 2014 Ark. App. 664, 448 S.W.3d 740, this court affirmed the circuit court's finding of a material change in circumstances, where the children's growth and maturity contributed to those changed circumstances. As in *McCoy*, *supra*, this analysis necessarily turns in large part upon credibility determinations, and we give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the children's best interest. *McCoy*, 2014 Ark. App. 664, at 3–4, 448 S.W.3d at 741.

Given that deference and our de novo review of the record, we affirm, relying not only on the trial court's determination that the child could participate in managing his health, despite the mishap during visitation with his father, but also the evidence that the child was able to participate in football, basketball, and baseball.[1] The difference between a two-year-old's reliance on others for monitoring and medication differs greatly from that of an eight-year-old's ability to explain what he is feeling and what his needs might be. The fact that K.N. participates in physical activities supports this conclusion. The trial court's determination that it was in the child's best interest to modify visitation is affirmed.

Affirmed.

VIRDEN, GLOVER, and VAUGHT, JJ., agree.

WHITEAKER and HOOFMAN, JJ., dissent.

---

[1]In its oral ruling, the trial court mentioned that the child was older and "obviously participates in his own medical treatment." This finding was not included in the trial court's written order.

**PHILLIP T. WHITEAKER, Judge, dissenting.** The majority concludes that appellee David Newby successfully demonstrated that a material change in circumstances had occurred such that a modification of visitation was warranted. For the reasons set forth in this opinion, I respectfully disagree and dissent.

I begin by considering the nature of our standard of review. Our standard of review in domestic-relations cases is de novo. Under this standard, we review the evidence de novo and determine whether the factual *findings* were clearly erroneous, or whether the result reached was arbitrary or groundless. *Lewellen v. Sup. Ct. Comm. on Prof'l Conduct*, 353 Ark. 641, 110 S.W.3d 263 (2003); *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). A de novo review does not, however, entitle this court to sit as a super fact-finder. "[D]e novo review does not mean that . . . the appellate court becomes the surrogate trial judge. What it does mean is that a complete review of the evidence and record may take place as part of the appellate review to determine whether the trial court clearly erred in either making a finding of fact or in failing to do so." *Stehle v. Zimmerebner*, 375 Ark. 446, 455–56, 291 S.W.3d 573, 580 (2009). Applying this standard to the case at hand, I believe that the findings that were actually made by the trial court were clearly erroneous.

The trial court found that a material change in circumstances had occurred and that it was in the best interest of the parties' child that visitation be modified. The trial court did not specify findings of fact within its written order to support its conclusions. In its oral ruling, however, the court enunciated two bases, and two bases only, for its finding that there had been a material change in circumstances that warranted a modification of visitation: first,

that the child was older; and second, that he was capable of "participating in his own medical treatment."

As to the first of these two bases, I agree with the majority that the mere passage of time and the increasing age of a child has never been held to constitute a material change of circumstances sufficient to warrant modification of visitation. *See Harrington v. Harrington*, 55 Ark. App. 22, 928 S.W.2d 806 (1996). *But cf. McCoy v. Kincade*, 2014 Ark. App. 664, 448 S.W.3d 740 (passage of time, coupled with other factors including a move by one parent across the state and the children's increased activities, constituted a material change in circumstances). Thus, in order for the court's finding that the child was older to constitute a material change of circumstances sufficient to warrant a modification of visitation, it must be coupled with some other factor.

As to the second basis—the "other factor"—the court found that the child was participating in his own medical treatment. The testimony introduced at trial, however, did not bear out this finding. The only testimony about the child's participation in his own medical treatment during visitations with David was that David assumed that the child would take his medicine. In reality, the child did not. The court's finding that the child could handle his own medical issues was therefore not supported by the evidence. Accordingly, the circuit court's finding of a material change in circumstances based on the child's increasing age was clearly legally erroneous because it was not coupled with any other factor.

At this point, I believe that our de novo review is complete. I disagree with the majority's conclusion that the evidence of the child's participation in sports activities is a

8

"supporting" factor in finding a material change of circumstances. The circuit court made no findings regarding the child's involvement in sports. The test on de novo review is whether we can say that the trial court's findings are clearly erroneous. *McCracken v. McCracken*, 2009 Ark. App. 758, 358 S.W.3d 474; *Statler v. Painter*, 84 Ark. App. 114, 133 S.W.3d 425 (2003). This presupposes that a finding was made. We exceed the scope of our standard and place ourselves in the posture of being a surrogate trial judge when we conclude that the evidence supports a fact not found by the trial court. In this case, I believe that those findings that were, in fact, made by the trial court were clearly erroneous, and for that reason, I would reverse.

HOOFMAN, J., joins.

*Taylor Law Partners, LLP*, by: *William B. Putman*, for appellant.

No response.