RHONDA K. WOOD, Associate Justice 11 This is an appeal from the circuit court’s modification -of the parties’ custody agreement. Appellant, Cheri Suzanne McCoy, challenges the circuit court’s finding that there has been a material change of circumstances necessitating a modification in custody. McCoy argues that the circuit court primarily relied on the passage of time since the agreement, which standing alone is insufficient to support a material change in circumstances. -We affirm the decision of the circuit court. McCoy and appellee, Vernon Kincade, divorced in 2004. They were awarded joint custody of the minor children, C.K. and A.K., who were then three and five years old. ' The circuit court approved their -child-custody and property-settlement agreement, which provided .that Kin-cade would have the children Sunday evenings through Friday evenings. McCoy had custody of the children Thursday evenings and the first three weekends of the month and the fifth weekend of any month with five weekends.’ McCoy had five weeks of summer visitation, which included two weeks in June, two week’s in July and one week in [2August, none of which were to be consecutive. ‘ At the time of the éntry of the agreement both parties resided in Mountain Home. However, approximately one month following the divorce, McCoy moved to Fayetteville, a distance of over 120 miles from Kincade and the children.- Additionally, both parents had remarried since their divorce. In 2013, Kincade filed a petition to modify custody and visitation alleging that a material changes in circumstances had occurred. McCoy counterfiled for modification of the custody agreement.[1] The circuit court, after hearing testimony from McCoy, Kincade, and the children, determined that there had been a material change of circumstances and that it was in the children's best interest to be in the primary custody of Kincade. It awarded McCoy a slight variation of the prior custody arrangement on standard visitation. McCoy's appeal to the court of appeals followed. The court of appeals affirmed the circuit court’s decision, and we granted McCoy’s petition for review from the court of appeals. When this court grants a petition for review of a decision from- the court of appeals, we treat the matter as if it had been originally filed in this court. Single-tary v. Singletary, 2013 Ark. 506, 431 S.W.3d 234. We review appeals in domestic relation cases de novo and will not reverse the, circuit court’s finding of fact unless it is clearly erroneous. Id. In cases involving children,'the circuit court is clearly in a superior and unique position to observe the parties and We give great deference to the court’s findings of facts. Stills v. Stills, 2010 Ark. 132, 361 S.W.3d 823. 13When a change of custody is sought in a joint-custody arrangement, the circuit court first must determine that there has been a material change of circumstances from the time the divorce decree originally was entered. Singletary v. Singletary, 2013 Ark. 506, 431 S.W.3d 234. Only after meeting that threshold will the court then consider what is in the best interest of the children. Id. McCoy’s appeal challenges only the court’s finding that a material change of circumstances has transpired since the agreement. She does not dispute the circuit court’s determination that the change in custody is in the best interest of the children. McCoy argues the circuit court relied primarily on the passage of time since the custody agreement and that factor, standing alone, is insufficient to warrant a change of custody. However, the circuit court’s consideration of the passage of time was but ojie of several factors on which it relied in deciding there was a material change of circumstances. In any event, we previously have found that the passage of time is one factor the court may consider in finding a material change of circumstances. See Myers v. McCall, 2009 Ark. App. 541, 334 ,S.W.3d 878; see also Hollinger v. Hollinger, 65 Ark. App. 110, 986 S.W.2d 105 (1999). The most important material change of circumstances was McCoy’s move to Fay-etteville, which the circuit court said altered the “fundamental nature of the original joint custody agreement ... with the potential to significantly impact the children” when McCoy moved to Fayetteville. The court went further to explain, “the nature of the original custody agreement has changed in that the children.have matured to a point in their lives where their school activities and the social interaction with their classmates . has become Usignificantly more important.” The court found that a “significant change” occurred affecting the well-being of the children. Upon a de novo review of the.,record and giving deference to the circuit court’s .finding of facts, we cannot say this finding was in error. McCoy’s move to Fayetteville clearly impacted the parties’ original custody agreement and was significantly .impacting the children’s lives and well-being. There was considerable evidence that the custody agreement, which provided .McCoy with a vast majority of the weekend visitation, drastically affected the children because she no longer resided in the same city or even county. Although the parties attempted to make the custodial agreement work over the eight years following their divorce, it came to the point that Kincade believed the children’s weekends away from their activities and friends was harming their development. The children were missing a large number of social events that the circuit court, to whom we give deference, considered was materially affecting their well-being. For example, C.K., who was 14 years old and in the ninth grade, testified that he had always been involved in school athletics and had played football since the peewee league. He was the quarterback and a linebacker; however, the visitation schedule caused him to miss summer workouts and weekend games,' which negatively impacted his practice and performance. He further testified that he had to quit baseball because his mother would not allow them to work thé visitation around it. C.K. did not want to stop visiting his mother, but simply was asking for relief from three weekends a month to two weekends a month. A.K., who was 12 years old, also desired a more traditional visitation schedule,J^which included staying with her mother in Fayetteville every other weekend. She testified to missing the Christmas play and being limited to activities she could, join due to the .visitation schedule. Ultimately, the evidence suggested that McCoy did not seem to grasp the importance of the children’s activities. Nor did she, encourage participation by allowing the children to keep their social commitments in Mountain Home during, her visir tation. Both children testified that they now had a strained relationship with their mother in part due to the visitation schedule. The factors in this, case are all factors that we have held are appropriate when determining if there has- been a material change of circumstances. ■ These factors include, but are not limited to, one parent’s relocation, the passage of time, remarriage of one .or both parents, strained relationship between the parent and child, and the preference of the children. See Lewellyn v. Lewellyn, 351 Ark. 346, 93 S.W.3d 681 (2002); Hollinger v. Hollinger, 65 Ark. App. 110, 986 S.W.2d 105 (1999). All of these factors were present in this ease and their combined effect supports the circuit court’s holding that there was a material change of circumstances. Affirmed. Special Justice Henry Kinslow joins. Special Justice Joseph C. Self concurs. Baker and Hart, JJ., dissent. Goodson and Wynne, JJ., not participating. . Notably, McCoy also alleged a material change of circumstances in her couhter-petition for custody.