Cite as 2021 Ark. App. 167

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** CV-20-550

|  |  |
|---|---|
| MARGARET E. NALLEY<br>APPELLANT<br><br>V.<br><br>MICHAEL ADAMS<br>APPELLEE | **Opinion Delivered:** April 14, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION<br>[NO. 60DR-18-3721]<br><br>HONORABLE VANN SMITH, JUDGE<br><br>REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Margaret Nalley appeals from the Pulaski County Circuit Court's order filed on July 8, 2020, in favor of appellee Michael Adams. On appeal, Margaret contends that the circuit court erred in finding that changes that occurred exclusively in Michael's life were sufficient to constitute a material change of circumstances to support his motion. We agree and reverse and remand.

## I. *Relevant Facts*

Dr. Michael Adams (Michael) was an anesthesiologist in Jonesboro. Margaret Nalley (Margaret) was a registered nurse in Little Rock. Margaret and Michael were involved in a relationship that resulted in the birth of their daughter, M.A., who was born on May 10, 2017, in Little Rock. Michael and Margaret were not married. Shortly after the birth, Margaret and M.A. moved to Jonesboro and resided with Michael. The relationship

between Michael and Margaret deteriorated, and on October 3, 2018, Margaret and M.A. moved back to Little Rock. Margaret subsequently filed an action in Pulaski County to adjudicate the paternity of M.A. and requested that she be awarded custody. Michael filed an answer wherein he denied all allegations in the petition for paternity.[1] The circuit court determined Michael is the father of M.A. and awarded Michael and Margaret joint custody of M.A. in a written order filed on July 17, 2019, the details of which are set forth below. Further, the circuit court ordered Michael to pay child support in the amount of $3,511 monthly and awarded Margaret a judgment against Michael in the amount of $19,359 for back support. Regarding custody, the order provided the following in pertinent part:

> 2. The parties stipulate that they *shall have joint legal custody of the minor child with the mother serving as the primary caregiver.* The remaining issues to resolve is the division of time between the mother and father and the issue of child support. Both will be discussed separately.

> 3. <u>Shared time</u>. The mother lives in Little Rock, Arkansas and the father lives in Jonesboro, Arkansas, a travel time of slightly over two hours. The parties lived together in Jonesboro until October 3, 2018, when they separated and the mother moved to Little Rock in search of employment.

> 4. The mother, in fact, applied for a job at Baptist Hospital on October 4, 2018. She was offered a job which she turned down. The mother has now obtained employment at Baptist Hospital earning $22.63 per hour for a 36-hour work week. The father is an anesthesiologist in Jonesboro and, up to the present date, worked not only his shifts at a hospital but also moonlighted in Siloam Springs, Arkansas and worked other doctors' shifts in Jonesboro for additional compensation. The father states that he has now decided to only work his required shifts so that he will have more time available to visit with their daughter.

---

[1]Michael also filed a motion to dismiss, contending that the Pulaski County Circuit Court was the improper venue for the paternity and custody action. Michael contended that Margaret and M.A. were not residents of Pulaski County; rather, they were residents of Craighead County. The circuit court held a hearing and determined that Margaret and M.A. were residents of Pulaski County and denied the motion to dismiss. This order was not appealed.

5. The Court finds that both parties are suitable to provide the care, love and nurture for the minor child. Both are medical professionals, well–educated and capable of making good decisions for their daughter. It is a compliment to both parties that they understood and agreed that there should be joint custody of the child recognizing that the shortfalls of either party were insufficient to prevent a joint custodial relationship. To say it another way, both parties recognize that the other party is, and can be, a proper parent for the child.

6. Unfortunately, the parties live two hours away from each other which makes it difficult to fashion a schedule so that both parties will have adequate time with the minor child. To complicate matters, the mother indicated that she works three 12-hour shifts probably on Monday, Tuesday and Wednesday, even though it could be other days. The father submitted a schedule for days he is off from his work, but the schedule provides little flexibility.

7. *The Court has considered the desires of both parties, the recommendation of the attorney ad litem and the work schedules of both parties in trying to fashion a shared visitation schedule for the parties and their two-year-old child.* The parties are encouraged to offer flexibility to the other party as much as possible.

. . . .

10. Both parties are free to request additional visitation with the minor child at any reasonable time. Particularly, if the father elects to visit the child in Little Rock for an overnight, he must give the mother reasonable notice. Reasonable notice is at least 24 hours in advance. If the mother has plans for that night, additional time for visitation is to be arranged.

. . . .

16. The parties agreed to use Our Family Wizard in their communication with each other but it is strongly encouraged that the parties reach a level of civility so that they can discuss important issues involving the child.

(Emphasis added.) The circuit court set out a specific visitation schedule from August 1, 2019, through August 2020, including holidays. The circuit court then determined that

[b]eginning September 2020, *the father will have one week (seven days) per month plus one weekend per month from Thursday to Sunday.* The father is to obtain his

3

calendar for that period of time and provide it to the mother. If the mother does not agree to the dates that he selects, then they can either resolve the differences or return to court for a resolution.

(Emphasis added.)

Only five months later, on December 30, 2019, Michael filed a motion for contempt and for modification against Margaret. In his motion for contempt, he acknowledged that the parties were to share joint legal custody but were not awarded equal time due to the distance between the parties. Michael, however, alleged that Margaret had systematically been refusing to grant him the additional time he had requested to spend with M.A. Therefore, he asked that Margaret be ordered to show cause and be punished accordingly. Michael's motion also contained a request for modification of child support. Michael alleged that he had a 10 percent reduction in income because another company had essentially bought out his anesthesiology practice and therefore, he was entitled to a reduction in child support.

Two months later, on February 24, 2020, Michael filed an amended motion for contempt and for modification. In his amended motion, not only did Michael repeat his allegations of contempt and his request to reduce his child-support obligations, Michael requested a change in custody of M.A. Michael alleged that because of the buyout of his practice in Jonesboro, he was taking a new job in Hot Springs and was going to live in Little Rock. He therefore alleged that "[t]here has been a material change in circumstance warranting a modification of custody in that due to the change of employment, due to third parties, the Defendant is relocating to Little Rock, Arkansas." He further alleged that "[i]t

4

is in the child's best interest that the parties share joint custody of the minor child with each party exercising equal time."

Margaret filed a response to the amended motion stating that Michael's allegations are misleading. She explained that she has allowed and continues to allow additional visitation. However, Margaret admitted that she has not allowed every request because Michael would request additional visitation every day he had off without taking into account any of the other factors of M.A.'s needs. Margaret further pleaded that the alleged buyout did not "require" Michael to find new employment and that his relocation to Little Rock did not constitute a change in circumstances warranting modification of custody. She further denied that a modification would be in M.A.'s best interest because the custody order was entered to promote stability, predictability, and continuity in M.A.'s life and should "not be modified based on changes that occur exclusively in the Defendant's life and which are of the Defendant's own making." Therefore, she requested that Michael's motion be denied and dismissed and that she be awarded attorney's fees.

A hearing was held on Michael's motion on June 29, 2020. At the hearing, regarding contempt, Michael testified that Margaret did not grant him all the additional time he requested. He did admit, however, that Margaret had approved some of the additional time.

Regarding change of custody, Michael testified that he had worked for NEA Baptist Memorial Hospital in Jonesboro as a staff anesthesiologist. He testified that his employment changed beginning in November 2019 when the Hospital sold the anesthesia rights to an outside group called Lifelinc, and Lifelinc took over anesthesiology. Michael explained that he was concerned about staying with Lifelinc because it had been sued forty-two times for

malpractice and because he would have been expected to "cover" more CRNAs[2] after the company took over. Therefore, he began to look for new employment. Michael testified that of the four anesthesiologists on staff when Lifelinc took over, he was the only one that did not sign on with Lifelinc despite an offer to do so. Under the terms of his original employment agreement with NEA Baptist, he was allowed to stay on at the hospital for ninety days after Lifelinc took over without having to sign on with Lifelinc. Michael testified that he exercised that option and continued working there until March 31, 2020, at which point he quit.

Michael further testified that he had found new employment in Hot Springs at Pain Treatment Centers of America that would start in July 2020. He further testified that he had rented a house in Little Rock and would commute to his new job in Hot Springs. He testified that his new hours of employment would be Monday through Thursday from 8:00 a.m. to 3:00 or 4:00 p.m. with no nights, weekends, or Fridays.

On cross-examination, Michael admitted that nobody forced him to leave NEA Baptist in Jonesboro and that his decision to leave was purely voluntary. He also admitted that the parties had agreed "to have joint legal custody with [Margaret] being the primary custodian. The only issue at that time was the number of days I would get for visitation."[3]

Regarding the motion for contempt, Margaret testified that she gave Michael some of the extra days of visitation he requested. She explained that she denied some of the

---

[2]A CRNA is a certified registered nurse anesthetist.

[3]The July 2019 order generally provided Michael with one full week (seven days) and one weekend from Thursday through Sunday—or ten to eleven days a month.

requests because Michael did not want to drive to Little Rock to pick M.A. up for the visitation. Margaret further explained Michael would request visitation every day he was free and approached visitation as though there was not a court order.

Regarding change of custody, Margaret testified that although Michael is a good father, she expressed her concern that he could not provide M.A. with the stability, consistency, and routine she is presently used to. Margaret also expressed her concerns over the permanency of Michael's relocation. She explained that although Michael had rented a house in Little Rock, he worked in Hot Springs and had also gone into business with his father in Mount Ida, Arkansas. Thus, she was concerned that Michael would eventually move again.

During closing arguments, Margaret's counsel argued that Michael had not proved a material change in circumstances since he voluntarily chose to move to Little Rock and that was his only basis for the modification. The circuit court pointedly asked Michael's counsel, "[Michael's] material changes have nothing to do with the mother?" Michael's counsel answered no. The court followed up with, "It's not something she's done?" Again, Michael's counsel answered no. Michael's counsel further stated,

> I think the law says we cannot purposely create a material change in order to change custody. And my client didn't do that. He was working and living in Jonesboro when they had the baby. She came here. Lifelinc bought out the contract, and he had the opportunity to come to Hot Springs, which I think is under the standards of material change of circumstances.

The circuit court took the matter under advisement.

On July 8, 2020, the circuit court filed its written order. It denied Michael's motion to find Margaret in contempt based on Margaret's denial to grant him every day of additional

7

visitation he requested. Regarding Michael's motion to modify custody, the circuit court made the following relevant findings:

7. Custody. The Plaintiff [Margaret] remains living in Little Rock, Arkansas with the minor child and the Defendant [Michael] has now relocated to Little Rock, Arkansas but works in Hot Springs, Arkansas at a pain clinic.

8. *The Defendant alleges a material change in circumstances since he is now in Little Rock, Arkansas and has a favorable work schedule of 8:00 a.m. to 4:00 p.m. Monday through Thursday.* The Defendant points out that the Court found that both parties are "suitable to provide care, love and nurture for the minor child," both are "well-educated and capable of making good decisions for their daughter" and both "agree that there should be joint custody of the child recognizing that the shortfalls of either party were insufficient to prevent a joint custodial relationship." *The Defendant requests that the parties share equal time with the minor child.*

9. *The Defendant's material change of circumstances is that he now lives in Little Rock, Arkansas, has a set schedule favorable to taking care of the minor child and that he would like to spend more time with the child.*

10. *Normally, the material change of circumstances has to do with the opposing party. In this case, the Plaintiff's circumstances have not changed.* The Plaintiff still works at Baptist Hospital and provides the everyday nurture and care for the child other than when the Defendant has visitation with the child.

11. However, the Court has already ordered, and the parties agreed, that they shall have joint legal custody of the child. The only reason in the initial Order that the parties did not share equal time with the child was that the Defendant lived in Jonesboro, Arkansas and the Plaintiff and child lived in Little Rock, Arkansas. *Since the Defendant has moved to Little Rock, there is no discernable reason why each party could not share equal time with the parties' three-year-old child. The law is clear in Arkansas that joint custody with equal time is favored.*

12. The Court orders that *the parties shall share joint custody with the minor child with the Plaintiff and the Defendant alternating weeks with an exchange on Friday after school. The Court, however, continues the order that Plaintiff shall be the final decision maker regarding all medical and educational decisions for the child but only after the Defendant has provided his input in all decisions.*

(Emphasis added.) The circuit court also modified child support and ordered Michael to pay $2,037.27 a month to Margaret beginning on July 6, 2020.[4] This appeal followed.

## II. *Standard of Review*

Generally, in reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664. It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. *McNutt, supra.* We give special deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses in child-custody cases, and this deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Horton v. Parrish*, 2015 Ark. App. 306, 461 S.W.3d 718. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.* The factors appropriate when determining if there has been a material change of circumstances include, but are not

---

[4]Margaret did not appeal the reduction in child support.

limited to, one parent's relocation, the passage of time, remarriage of one or both parents, strained relationship between the parent and child, and the preference of the children. *McCoy v. Kincade*, 2015 Ark. 389, 473 S.W.3d 8. Furthermore, this court does not examine the circuit court's findings in isolation; instead, we evaluate changed circumstances on a case-by-case basis. *Emis v. Emis*, 2020 Ark. App. 126, 597 S.W.3d 93. In doing so, we examine whether all the relevant factors, considered in the aggregate, support a modification of custody. *Id.*; *Boudreau*, 2011 Ark. App. 457, 384 S.W.3d 664. In other words, we have previously held that certain factors, when examined in the aggregate, may support a custody modification even when each factor, if examined in isolation, would not. *Geren Williams v. Geren*, 2015 Ark. App. 197, at 14 n.1, 458 S.W.3d 759, 768 n.1.

Once the circuit court determines that the threshold requirement of a material change in circumstances since the last order of custody has been met, the circuit court must then determine which party should have custody with the sole consideration being the best interest of the children. *Horton*, *supra*. The factors that a circuit court may consider in determining what is in the best interest of the children include the psychological relationship between the parents and children, the need for stability and continuity in the relationship between the parents and children, the past conduct of the parents toward the children, and the reasonable preference of the children. *Id.*

### III. *Material Change in Circumstances*

Here, Margaret's sole argument on appeal is that the circuit court erred when it concluded that Michael's change in employment and move to Little Rock from Jonesboro were material changes that warranted modifying child custody to grant Michael equal time

with M.A. As support for her argument, she cites the supreme court's holding that a parent "cannot use the circumstances he [or she] created as grounds to modify custody." *Jones v. Jones*, 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996). She further emphasizes that courts impose more stringent standards for modifications in custody than they do for initial determinations of custody to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. Michael responds that the buyout was "wholly out of [his] control" and that he had legitimate concerns about staying in that environment.[5] We agree with Margaret.

The holding in *Jones* has been often repeated and expanded by the appellate courts since it was first announced in 1996. In *Brown*, the supreme court reiterated "in the context of child-custody modification, that an appellant 'cannot use the circumstances he [or she] created as grounds to modify custody.'" *Brown v. Brown*, 2012 Ark. 89, at 7, 387 S.W.3d 159, 163 (quoting *Jones*, 326 Ark. at 491, 931 S.W.2d at 772). Arkansas appellate courts have further applied this concept in the context of relocation cases and have summarized that "[o]ur supreme court has been clear that relocation [alone] is not a change in circumstances warranting a change in child custody nor are circumstances created by the

---

[5]Michael also attempts to distinguish *Jones* and its progeny as being applicable only to a noncustodial parent and argues that because he was awarded "true" joint custody of M.A. under the circuit court's previous July 2019 order, the circuit court did not err. Margaret disputes Michael's characterization of the parties' previous custody arrangement and disputes that Michael was awarded true joint custody. We acknowledge that the circuit court's previous custody order is ambiguous in this respect and that cases subsequent to *Jones* have clarified ambiguous custody arrangements by looking at the nature and extent of the shared time and not just the description of the custody arrangement in a circuit court's order. However, as discussed herein, *Jones* and its progeny are applicable in this case regardless of our resolution of the order's ambiguity. Thus, we do not resolve this apparent ambiguity in this opinion.

party seeking the modification." *Dent v. Wyatt*, 2014 Ark. App. 343, at 2; *see Davenport v. Uselton*, 2013 Ark. App. 344 (holding that the father failed to prove a material change in circumstances to support his petition when he was the one who relocated, and a party should not be permitted to allege a material change of circumstances that he himself has created); *see also Brown*, *supra*; *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003); *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001); *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999); *Jones*, *supra*; *Higdon v. Roberts*, 2020 Ark. App. 59, 595 S.W.3d 19.

Even Michael's counsel acknowledged this statement of the law at the hearing when counsel stated, "I think the law says we cannot purposely create a material change in order to change custody." That is not to say that changes in the moving party's circumstances cannot be a factor when coupled with other circumstances, including discord between the parties, a relocation that had a negative impact upon the children, violations of court orders, and additional changes in the other parent's circumstances. *See McCoy v. Kincade*, 2015 Ark. 389, 473 S.W.3d 8; *Hamilton*, 337 Ark. 460, 989 S.W.2d 520; *Roberts v. Roberts*, 2020 Ark. App. 60, 595 S.W.3d 15; *Mason v. Mason*, 82 Ark. App. 133, 111 S.W.3d 855 (2003). In fact, our supreme court has stated that when multiple factors are present, "their combined effect" may support a circuit court's holding that there was a material change of circumstances. *McCoy*, 2015 Ark. 389, at 5, 473 S.W.3d at 11.

However, no *other* circumstances were present in this case. In fact, the circuit court specifically noted that Margaret's "circumstances have not changed," and Michael's counsel at the hearing agreed that the material change of circumstances was not based on anything Margaret did. Instead, Michael's counsel pointed to the fact that "Lifelinc bought out the

12

contract, and he had the opportunity to come to Hot Springs, which I think is under the standards of material change of circumstances." While his actions may be commendable for choosing to better himself and move closer to his child, those changes were created by Michael voluntarily, and they are insufficient—standing alone—to support a material change in circumstances under our longstanding appellate precedent.

The dissent would have us depart from this longstanding precedent and opines that our supreme court did not necessarily intend the rule announced in *Jones* to be expanded in the way it has over the past twenty-five years by this court and the supreme court. However, we must nevertheless follow the precedent set by the supreme court and are powerless to overrule its decisions. *Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009). Further, under the doctrine of stare decisis, the appellate courts are bound to follow prior case law, as the policy of stare decisis is designed to lend predictability and stability to the law. *Id.* It is well settled that precedent governs until it gives a result that is so patently wrong or manifestly unjust that a break becomes unavoidable. *Id.* We cannot hold that this is such a case. Therefore, because the circuit court's findings regarding a material change were clearly erroneous, we must reverse the circuit court's change of custody and remand for proceedings consistent with this opinion.

Reversed and remanded.

GLADWIN, WHITEAKER, and BROWN, JJ., agree.

HARRISON, C.J., and VIRDEN, J., dissent.

13

**BRANDON J. HARRISON, Chief Judge, dissenting.** I respectfully dissent from the majority's opinion because it is based in neither the caselaw when correctly read nor the judicial sense that must guide courts on a crucial aspect of family law. The circuit court's decision to modify the original custody terms in this case should be affirmed, not reversed. I would hold that the court did not clearly err when it determined that Michael Adams's relocation was, all things considered, a material change in circumstances that then opened the question of whether allowing him to spend more time with his young daughter, MA, was in her best interest.

The majority's error stems from a misunderstanding of at least eight supreme court cases. The misreading also directly undermines, if not implicitly overrules, a comparable number of this court's cases on the same subject. The majority has created a new (and undesirable) categorical rule of child-custody law. The new categorial rule is jarring because it springs from a misapplication of supreme court cases dating back to 1996, if not before that time. The new rule is alarming because it runs opposite common judicial sense in that it disincentivizes mature parental behavior salutary to the parent-child relationship. The new rule means that an untold number of parents cannot in the future seek more time with an untold number of children—even when it is undisputed (as in this case) that it would be in the child's best interest to spend more time with the petitioning parent. Now, a parent, despite reasonable and mature decisions, hard work, and positive goal-setting behaviors, may never go to the circuit court after a final custody decree has been entered and ask the court to modify the terms.

Today's decision requires time to fully appreciate. The usual cut-and-paste platitudes cannot deflect or diffuse the new rule's adverse effect. At the micro level, a circuit court cannot give equal time with a young daughter to an anesthesiologist who had to face a real-world situation that undisputedly implicated his professional reputation and medical license; a situation that he used to find a new job, and a place to live that is but minutes from his daughter, her daycare, and her current and future activities. All this was accomplished without one iota of inconvenience to the mother. At the macro level, an entirely fit and loving parent who might face the consequence of today's decision someday will surely be surprised to learn that this court has imposed a rule of law that blocks that entirely fit and loving parent from spending equal time with a child of tender years—just because the petitioning parent chose, for undisputedly legitimate reasons, to move closer to the child and to the child's mother. The decision is all the more confusing given Arkansas's public policy that favors parents having equal time with children when the parents are fit enough to discharge that privilege, as Adams by all accounts is, and Margaret Nalley does not dispute.[1] *See* Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Supp. 2019) ("In an action for divorce, an award of joint custody is favored in Arkansas."); *see also* Ark. Code Ann. § 9-13-101(a)(5) (Repl. 2020) (defining joint custody as the "approximate and reasonable equal division of time with the child by both parents as agreed to by the parents or as ordered by the court").

---

[1] "Mike is not a bad father. I believe Mike loves [MA]."

15

I am with Justice Louis Brandeis when he said, "If we desire respect for the law, we must first make the law respectable." The majority's new categorical rule runs counter to this wise admonition.

How does the majority justify its position, one the circuit court chose not to take? Well, it primarily relies on *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). The majority states, "Our supreme court's holding in *Jones* has been often repeated and expanded by our appellate courts since it was first announced in 1996." That is half right. The supreme court has recited and applied in earnest what I will call the *Jones* rule no less than eight times since 1996. But the majority is mistaken by concluding that *Jones* has been "expanded by our appellate courts." The *Jones* rule—as it was originally pronounced by the supreme court and has been applied since for more than twenty years—has never been expanded by that court. The *Jones* rule has been mistakenly expanded by this court in some cases; that is true. The supreme court, however, has been consistent in its application of *Jones* since the court decided that case in 1996. Internally, this court's caselaw is conflicted on how to state the law of a material change in circumstances. Externally, this court has never been more openly conflicted with the supreme court on the law of a material change in circumstances than it is today.

★ ★ ★

1. *The majority's mistaken reading of supreme court caselaw.* The majority holds that Adams cannot use the circumstances he created as a basis to allege that a material change in the child's life has occurred. As I have mentioned, the majority misreads important Arkansas Supreme Court cases. The misreading stems primarily from taking a phrase from *Jones* out

16

of context. When you take a statement of legal importance out of its factual context you risk changing the meaning and scope of the legal statement, entirely so in some instances. That is what the majority's decision has done.

*Jones* expressly reasoned that circumstances which predate an official custody determination—that is, circumstances that were known to the parties and the court *before* the custody decree's entry—cannot be used as the basis for a future allegation that there has been a material change in circumstances. The problem is that a short-form statement of the rule just expressed has proliferated. The pithy—but ultimately mischievous—statement from *Jones* that twists and cramps the true rule is this: "Stated simply, Dr. Jones cannot use the circumstances he created as grounds to modify custody." 326 Ark. at 491, 931 S.W.2d at 772. I will show that the incomplete phrasing is opposite the rule that *Jones* and other cases have announced and applied.

We return to the source. In simple terms, the main point in *Jones* for this case's purposes is that Dr. Jones had an affair while married, and after his divorce and child-custody case was finally decided, Dr. Jones married the nurse with whom he had the affair. He then alleged the remarriage was a material change in circumstances that justified a modification in his custody terms. The supreme court disagreed. Why? Because, as the supreme court made clear, Dr. Jones was engaged in the extramarital relationship during the divorce and custody proceeding, and the case was determined with that knowledge at hand; moreover, it was then known that he had contemplated remarriage before the final custody order was entered. To the contrary, Adams's change in circumstances with the Jonesboro medical practice did not exist when the custody order was entered. That is why *Jones* does not

control this case. The timing of the circumstances used to support the respective petitions to modify custody are opposite one another. It is that simple, that straightforward.

If there is doubt about what the supreme court meant in *Jones*, then consider what the court wrote in *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999). In *Campbell*, decided three years after *Jones*, the supreme court wrote, "We do not read the *Jones* case to say that changes in the life of the noncustodial parent are never pertinent in determining whether a significant change of circumstances has occurred, but that they were insufficient under the facts of that case to modify custody." *Id.* at 383, 985 S.W.2d at 726 (quoting *Campbell v. Campbell*, 63 Ark. App. 136, 146, 975 S.W.2d 869, 874 (1998)). The supreme court's observation in *Campbell* (1999) is faithful to *Jones* (1996). The two cases express the unremarkable point that a parent cannot use as a material change in circumstances that was known or had been contemplated when a custody decree was entered. This makes perfect sense. That is why a definite majority of appellate decisions in this state have interpreted *Jones* this way, which is to say, correctly. In fact, every supreme court case I have reviewed harmonizes with one another on this "material change" point. The majority's opinion, however, directly conflicts with decades' worth of supreme court caselaw. But I get ahead of myself; we have only reached cases decided through 1999.

Another example of the *Jones* rule being activated in 1999 is *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). In *Hamilton*, the supreme court said this of its own *Jones* opinion:

> In the first place, Karen's reliance on our holding in *Jones*, is misplaced. She asserts that *Jones* stands for the proposition that the noncustodial parent's remarriage cannot be properly considered by the chancellor in determining whether a modification in custody is warranted. This interpretation is too

18

narrow. In *Jones*, this court held that based on the facts presented, Dr. Jones's remarriage did not constitute a material change in circumstances. In other words, the holding in *Jones* merely underscores the rule that changes in circumstances of the noncustodial parent, including a claim of improved life because of remarriage, were not alone sufficient to modify an order of custody. *Indeed, during oral argument before this court, Dr. Jones admitted that at the time of the divorce decree, it was within his reasonable contemplation to remarry.* Given those facts, this court held:

> Stated simply, Dr. Jones cannot use the circumstances he created as grounds to modify custody. Given his awareness of the circumstances at the time he voluntarily entered into the agreement to award custody of Cameron to Ms. Jones, we cannot agree that his remarriage constituted a material change in circumstances.
>
> . . . .
>
> In sum, the holding in *Jones* was not intended to prohibit the chancellor from ever considering the event of a noncustodial parent's remarriage as a change in circumstances affecting the best interest of the children. *Rather, it is limited to the facts of that case, wherein there was evidence that the noncustodial parent's remarriage was reasonably contemplated at the time he entered into the custody agreement and, thus, could not have constituted a change in circumstances arising since the entry of the prior order.* The *Jones* decision is further distinguished from the instant case in that the decision rested largely on Dr. Jones's repeated procurement of ex parte orders. Moreover, the Jones court held that the chancellor had erroneously shifted the burden to Ms. Jones to prove her emotional stability. Accordingly, *Jones* is not controlling for the above reasons.

*Id.* at 467–68, 989 S.W.2d at 523–24 (emphasis added).

The supreme court has made clear through *Campbell* (1999) and *Hamilton* (1999) that *Jones* (1996) means the opposite of what today's majority opinion says it does. *Jones* does not hold that a parent can never be the agent for a material change that can be presented to a court in support of a petition to modify custody. Instead, the supreme court holds the opposite. In fact, the supreme court took pains in *Hamilton* to warn readers against making the very mistake that the majority opinion has today made.

19

How much clearer can the supreme court be?  The timing of the facts, events, or circumstances (call them what you please) upon which a petition to modify is based is the critical factor here.  There is no confusion when all the cases are given their just dessert, but no more than they deserve.  The passage of time has changed nothing except to allow *Jones*'s roots time to reach much deeper into the law that affects scores of families across this state.  So let us dig deeper, too.  The effort will unearth that more supreme court cases show that what the court wrote in *Jones*, *Campbell*, and *Hamilton* about the law of material change in circumstances is what the court meant to say.

Nalley's appellant's brief and the majority's opinion cite *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001), as stating the bright-line rule that a party should not be permitted to allege a material change of circumstances that he or she has created.  Both citations miss the true import of *Lloyd*.  *Lloyd* is an example of the supreme court using the short-form *Jones* rule.  The court wrote: "[A] change of circumstances of the *noncustodial* parent is not sufficient to justify modifying custody."  *Id*. at 626, 37 S.W.3d at 607.  But that is not the whole story on how the court applied its *Jones* rule in *Lloyd*.  When *Lloyd* is read as a whole, one sees that it was decided in accord with the true *Jones* rule.

In *Lloyd*, two children were born during a couple's marriage.  It was eventually determined that the wife had an affair, which resulted in one of the children born during the marriage being the child of the wife's extramarital partner.  So one child's biological father was the husband; the other child's biological father was the wife's extramarital partner.  In the divorce and custody case, the circuit court awarded custody of both children to the husband.  The mother subsequently married the man with whom she had the affair.  Those

20

two then petitioned for custody of both the new husband's child and the child fathered by her ex-husband. Because the biological status of both children and who should be their custodian was settled by the divorce decree, there had been no material change in circumstances. The important point is that despite the supreme court's unfortunate use of the mischievous short-form iteration of the *Jones* rule in *Lloyd*, the court remained entirely faithful to the reasoning it used in *Jones*, *Campbell*, and *Hamilton*.

Two years later, in 2003, the supreme court again recognized that a material change in circumstances can occur when a party presents facts that were not known to the parties or the circuit court when the original custody order was entered. *See Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). In *Taylor*, the father knew his own financial situation and the parties' respective educational backgrounds when the divorce decree was entered, so his better financial position and better educational background were not sufficient bases for a custody modification.

Another two years on, in 2005, the court in *Alphin v. Alphin* again held that a father had established changed circumstances because, when the original custody order was entered, the circuit court could not have known that the mother would have six or seven residences in the span of six years, and the frequent moves showed a lack of stability that had developed in the child's life. 364 Ark. 332, 219 S.W.3d 160 (2005).

We arrive to 2011. In that year, the supreme court *again* wrote that "[c]ircumstances known by the parties when they enter into a custody agreement cannot be the basis for finding that a material change in circumstances has occurred." *Orantes v. Orantes*, 2011 Ark.

21

159, at 7, 381 S.W.3d 758, 763. That is exactly how *Jones*, *Campbell*, *Hamilton*, *Lloyd*, *Taylor*, and *Alphin* reasoned on the law of material change of circumstances.

Where is the expansion that the majority's opinion relies on?

It did not happen in 2012 when the supreme court decided another case that is often cited in this area of the law, *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159. In that case, the supreme court cited *Jones* and repeated the phrase that one "cannot use the circumstances he [or she] created as grounds to modify custody." *Id.* at 8, 387 S.W.3d at 163. But that truncated phrasing of the true *Jones* rule did not expand any rule of law because, in *Brown*, the court applied the true *Jones* rule despite the short-form statement of the rule; the court therefore reaffirmed (again) what *Jones* truly holds.

In *Brown*, a divorce decree contained an agreement by the parents that once their daughter was eighteen months old, a standard visitation schedule would apply. The issue there was a breastfeeding and weaning schedule that the parties had agreed on and implemented. The father's visitation schedule was based on how long the feeding and weaning cycle was likely to take. Time passed, and the mother petitioned to modify the agreed-to visitation schedule, which included overnight visits. She did so on the premise that the World Health Organization had recommended that children under two years old should breastfeed. The father opposed the petition because he was tired of his time with the child being dictated by the breastfeeding issue, and he did not agree to extend that practice beyond what they had initially agreed to.

The circuit court agreed with the father. The mother appealed. The case made it to the supreme court, which held that no material change had occurred. Why? Because

22

the parties had clearly contemplated, *when the decree was first entered*, that the child may conceivably desire to breastfeed beyond eighteen months. *Brown*, 2012 Ark. 89, at 9–10, 387 S.W.3d at 164 ("In making our decision, it is important to this court that it was certainly within the contemplation of the parties *at the time the divorce decree was entered* that the child conceivably might desire to continue breast-feeding beyond eighteen months.") (emphasis added). This reasoning wholly accords with *Jones*. Timing is everything, so one must bear continually in mind the critical point that in neither *Jones* nor *Brown*, for example, did the supreme court foreclose conditions or circumstances that may arise after the entry of a custody decree from serving as a material change for modification purposes. The supreme court's caselaw only holds that circumstances or facts known or contemplated when a custody decree was entered cannot be a basis for a subsequent allegation that a material change has occurred. *See McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91 (citing *Brown* and noting that the changed conditions occurred *after* the decree was entered).

The true *Jones* rule—facts or circumstances known to the parties and to the court when a custody order is entered cannot be used to support subsequent modifications of custody—has been applied by this court, too, not just the supreme court. The majority's opinion in this case therefore crashes head-on into some of this court's cases as well. For example, this court correctly applied *Jones* in *Eversole v. Eversole*, 2015 Ark. App. 645, 476 S.W.3d 199. In *Eversole*, a mother moved to Arkansas shortly after a divorce decree was entered in Georgia. The father later complained that his visitation was inadequate and difficult to manage. We affirmed the circuit court's decision that the cost of travel and the difficulty of arranging visitation around the father's work schedule were not material changes

because *those difficulties were known by him and contemplated by the court when the decree was entered.* That the father later "found it difficult to comply" with his own agreement was not a material change. *Id*. at 10, 476 S.W.3d at 205. Today's majority decision runs counter to *Eversole*'s primary reasoning, which was only the *Jones* rule properly read and applied. Another case in which this court correctly applied *Jones* is *Hackney v. Hackney*, 2015 Ark. App. 114, 456 S.W.3d 394. In *Hackney*, we observed that the alleged material change was based on facts not known to the parties or the court when the decree was entered. *Id*. at 7, 456 S.W.3d at 398 ("[A]ny modification of appellee's visitation was due to the child's having moved to Houston, which was a material change from the circumstances of the original visitation order found in the divorce decree.").

Just last year, this court correctly applied *Jones* again in *Higdon v. Roberts*: "When a circuit court considers whether there has been a material change in circumstances, it considers the facts that have changed *or were not known by the court when it entered the previous order*." 2020 Ark. App. 59, at 6, 595 S.W.3d 19, 24 (emphasis added). In *Higdon*, the parties agreed that the father would have primary custody and receive child support from the mother in a certain amount. So the father's allegation that he needed more child support because the child was spending more time with him was not a basis for a material change because that situation was clearly known by the parties and agreed to when the custody order was entered. This court rightly applied *Jones* in *Higdon*. But today the majority has strayed and issued an opinion diametrically opposed to *Higdon*'s reasoning.

Although *Jones* and related cases have been misapplied at times by this court, that is no reason to do it again. An example or two of this court's previous misuse of *Jones* is

24

instructive because it shows how troublesome that cut-and-paste precedent can be if left unchecked. *Wyatt v. Dent* is an example of a court's oversimplification—and therefore a misapplication—of the *Jones* rule when it is cut and pasted from its originating context. In *Dent*, the parents filed competing motions to modify custody. The father, who was the custodial parent, petitioned to move from Arkansas to Virginia with the child because of his wife's new job. The mother, a noncustodial parent, alleged that "recent improvements in her situation" plus the father's move out of state with the child warranted a change in custody back to her. *Dent*, 2014 Ark. App. 343, at 2. The mother, a noncustodial parent, had moved back to Arkansas *after the last custody order* had been entered to be closer to her son, she was active in his education and after-school activities, and she had stable relationships with her family and romantic partner. We held that she failed to meet her burden of proof because a noncustodial parent moving to be closer to her son and spend more time with him was not a material change in circumstance.

Why that holding? In part, this court held that the mother herself had created the change *postdecree* when she moved to Arkansas to be closer to the child. *Dent*, 2014 Ark. App. 343, at 2 ("Our supreme court has been clear that relocation is not a change in circumstances warranting a change in child custody nor are circumstances created by the party seeking the modification." (citing *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003); *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159). I respectfully disagree with *Dent*'s statement of the law given the timing of the mother's move. If you delete the statement that "a party cannot allege a material change in circumstance that he himself has created" from your lexicon given how *Jones*, *Campbell*, *Hamilton*, and *Brown* actually

25

reasoned, then the analysis is straightforward: a material change in circumstances needed to support a petition to modify custody terms cannot be based on facts, events, or circumstances known to the parties and court when a "final" custody determination was entered. *Dent* is also an insufficient guide because *Hollandsworth* does not hold, as *Dent* says, that "relocation is not a change in circumstances warranting a change in child custody." 2014 Ark. App. 343, at 2. As I will soon explain, *Hollandsworth* only holds that "[r]elocation of a primary custodian and his or her children *alone* is not a material change in circumstance." *Hollandsworth*, 353 Ark. at 476, 109 S.W.3d at 657 (emphasis added).

Another example of this court's misapplication of *Jones* is *Davenport v. Uselton*, 2013 Ark. App. 344. There, the parties divorced in 2008 and a custody decree was entered as a result. Three years later, the father alleged a material change in circumstances because the traveling distance between the parents had increased given the father's relocation. So he asked the court to change the custody arrangement. The court denied the request, and the father appealed. This court held that because the father was the one who had relocated postdecree, not the mother, he could not allege that a material change in circumstances had occurred. We wrote, "A party should not be permitted to allege a material change of circumstances that he himself has created." *Id*. at 2. Although well meaning, there is no such categorical rule. This court's holding in *Davenport* was mistaken because there was no evidence that the father's move had been contemplated when the custody order was entered three years before he petitioned the court for a modification; the move had not been previously contemplated, much less litigated.

26

The circuit court in this case recognized what the majority has not: a new categorical rule that a parent may never create his or her own material change in circumstances stultifies and petrifies parents' relationships with children and, in some sense, the coparents' relationship, too. Parents' life circumstances, having been frozen at one point in "litigation time," so to speak, will be used against them every year going forward. This must be so regardless of the positive change that parents may create or experience for any number of reasons, and which for any number of reasons may service a child's best interests. Under the new categorical rule the majority has imposed, a parent cannot as a matter of law plead that a material change had occurred simply because he or she was the agent for some important *positive* life change. A rule of family law that turns a blind judicial eye to all positive changes in a parent's life that may occur postdecree instead of focusing on what facts or circumstances were extant when the decree was first entered upends the *Jones* rule.

2. *The supreme court relocation cases do not require a reversal.* The majority reverses the circuit court's decision because Adams cannot create his own material change of circumstances. But no Arkansas caselaw forecloses the possibility that a parent's relocation that has a positive impact on a child cannot be a material change. This is that case. The circuit court was not clearly wrong when it concluded that Adams's relocation to Little Rock was a material change given the whole of the record before us.

The general rule in relocation cases is that "[r]elocation of a primary custodian and his or her children *alone* is not a material change in circumstance." *Hollandsworth*, 353 Ark. at 476, 109 S.W.3d at 657 (holding modified by *Cooper v. Kalkwarf*, 2017 Ark. 331, 532 S.W.3d 58) (emphasis added). In *Hollandsworth*, the supreme court established a

27

presumption in favor of preserving the custodial relationship in favor of relocation when a primary custodian wants to move with the child. *See Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823 (explaining presumption established in *Hollandsworth*).

In *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234, the supreme court held that the *Hollandsworth* presumption does not apply when parents share joint custody. It reasoned that "in a true joint-custody arrangement, both parents share equal time and custody with the child; therefore, there is not one child-parent relationship to take preference over the other." *Id*. at 8–9, 431 S.W.3d at 240. In *Singletary*, the parties' divorce decree stated that the "parties shall have joint custody . . . with [the mother] having primary custody." 2013 Ark. 506, at 2, 431 S.W.3d 234, 236. A year later, the mother alleged a change in circumstances because she was moving to Texas due to her new husband's job change. The father moved for sole custody of the daughter, which the circuit court granted. The circuit court found—and the supreme court affirmed—that the mother's relocation and the "parties' inability to cooperate" were material changes in circumstance. According to the supreme court, these facts were sufficient to support the circuit court's conclusion that a material change had occurred. *Singletary*'s rationale that a mother-child relationship has no greater priority than a father-child relationship when the parties share joint custody is important to note.

Then came *Cooper v. Kalkwarf*, 2017 Ark. 331, 532 S.W.3d 58, in which the supreme court clarified that the *Hollandsworth* presumption is raised when the parent seeking to relocate is not just labeled the "primary" custodian but also spends significantly more time with the child than the other parent. While retaining the *Hollandsworth* presumption, the

28

court acknowledged it was in the minority of states. The court noted that "the majority of states, either by statute or by case law, now impose a best-interests test rather than a preference or presumption in favor of a primary custodian." *Id.* at 15, 532 S.W.3d at 67. But we have what we have. And the current state of the law does not demand the majority's conclusion.

In *Cooper*, the mother alleged that a material change in circumstance had occurred because her husband got a better job in Texas; she therefore wanted to move the child to Texas. The father wanted the child to remain in Little Rock. The circuit court granted the mother's request to modify custody. The supreme court, however, reversed and remanded because the circuit court had erroneously applied the *Hollandsworth* presumption in the mother's favor. The supreme court did not decide whether the mother's proposed move was a material change; it decided only that the mother and father shared joint physical and legal custody.

These seminal relocation cases focus on who has the legal burden of proof; and one case, *Singletary*, discusses when a parent's move materially affects the other parent's relationship with the child negatively. The enforceability or interpretation of divorce-decree provisions regarding relocation was also front and center in those cases. *Stills*, 2010 Ark. 132, at 9, 361 S.W.3d at 828 (*Hollandsworth* presumption is not waivable). Sometimes the parents in the relocation cases ask if they can move even before the move occurs, which is to say before an alleged material change based on a move has even occurred. *Id.*; *Cooper*, *supra*.

But what the relocation cases have not decided is whether a parent's move that simultaneously places him *closer to the child and to the child's mother* is foreclosed as a matter of law from being considered as a material change of circumstance. Furthermore, no rule of law holds that a parent's material change must be negative rather than positive. Here, we have what can only be deemed a positive change from a child's perspective. MA would get to see her father more, and the mother has not provided a sufficient reason why he should not get equal time. That was the circuit court's ruling. The court was well within its considerable discretion to decide the case that way.

In some circumstances, one parent's move can give rise to a material change like it did in *McCoy v. Kincade*, 2015 Ark. 389, 473 S.W.3d 8. In *McCoy*, the mother moved away from the children who resided in Mountain Home (presumably without prior permission from the court). The mother, who was a joint custodian, later moved to modify custody. The circuit court agreed with the mother that a material change had occurred and modified the joint arrangement. The supreme court affirmed, reasoning that the mother had moved to a city a significant distance from Mountain Home, and because of that choice, the children were missing school activities and social events on weekends. Consequently, the move "significantly impact[ed] the children's lives and well-being." *Id.* at 4, 473 S.W.3d at 11. The takeaway from *McCoy* for this case's purpose is that a parent's move can, in some circumstances, be a material change such that the modification request will be decided on its merit.

An example of a relocation case from the court of appeals is *Killingsworth v. Dittmar*, 2018 Ark. App. 294, 552 S.W.3d 1. In that joint-custody case, we affirmed the circuit

court's decision that (1) a mother's fifty-one-mile move within Arkansas to get a better job, which in turn meant that her children could attend better schools, was one of several material changes that had occurred; (2) the mother was bound by her pleadings; and (3) a modification of the joint-custody arrangement was justified.

In this case, we can set *Hollandsworth* and its presumption aside because no parent has moved *with a child* to a location different from where the child was living when the custody decree was entered. Nalley chose to live in Little Rock. Her right to travel is in no way being infringed; her right to travel is not even an issue. And *Singletary*, which held that the party petitioning for a modification in a joint-custody situation must show a change in circumstances since the last custody order was entered, is no bar to affirming the circuit court's order here. This is so because Adams has shown that a (positive) material change has occurred since the court's July 2019 custody determination. This case is unlike the typical relocation case because no parent has moved out of state, and Adams's move closer to MA and her mother does not threaten or diminish the relationship that Nalley has with MA—especially given the court's findings that Adams would have received more time the first time around had he lived closer to Nalley and MA. The child has remained and will continue to remain in the same home and location that she has been in since the last custody order was entered. The only change in her life will be that she will spend equal time with her father. Nalley does not assert, much less has she proved, that Adams is an unfit parent. Obviously, the circuit court found him to be fit and that more time with MA would serve her best interest.

To sum up, the takeaway from the relocation cases is that a move out of state by a parent with joint legal custody or with primary physical custody is not a material change of circumstances *per se*. Whether a material change has arisen is, as always, determined on a case-by-case basis. Here, Adams's relocation to Little Rock was not the only change at issue in the case. The parties could not historically agree on how to "offer flexibility to the other party as much possible" or how to resolve conflicts about Adams's work schedule and the time he had available to spend with MA.

3. *Diminishing parental discord is a legitimate judicial goal that supports a custody modification.* I close with the point that the circuit court's decision to modify the decree while continuing joint custody was made with the purpose to de-escalate the conflict between Adams and Nalley that the "time issue" had created between them. That decision is not clearly wrong. The supreme court has recognized that, as a general matter, de-escalation is a legitimate reason to make a change to the exiting joint-custody arrangement. *See Pace v. Pace*, 2020 Ark. 108, at 10, 595 S.W.3d 347, 352–53 (noting with approval a court's decision "to lessen conflict by modifying the more contentious provisions in a custody decree without scrapping the basic joint-custody arrangement"). Of course, each case is driven by its own facts.

Within six months of the final decree's entry, Adams and Nalley had resorted to spreadsheets and swearing matches over when and how Adams could spend additional time with MA. This conflict was part of the overall circumstances and relational environment impacting MA. The court's solution was to make a one week on/one week off schedule so that each parent could have equal time with MA. And equal time makes sense in this

32

case. It is, as I have already said, this state's public policy. *See* Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) ("In an action for divorce, an award of joint custody is favored in Arkansas."); *see also* Ark. Code Ann. § 9-13-101(a)(5) (defining joint custody as the "approximate and reasonable equal division of time with the child by both parents as agreed to by the parents or as ordered by the court"). Therefore, the stated public policy favoring joint custody should be considered when a court determines whether a material change in circumstances has occurred. *Pace, supra.* The circuit court's decision to change a 65/35 division of time to 50/50 was not clearly wrong given the particular and main reason for the discord when it did occur. The court's decision is calculated to reduce the parents' conflict, and that solution aligns with this state's public policy and MA's best interest. (Recall that Nalley did not argue on appeal that a custody change was against MA's best interest.)

4. *Conclusion*. The tragic irony of today's decision is that the law provides due process, time, and material support to parents who have had their children taken into temporary state custody because of parental-fitness deficits of all sorts. In those instances, parents are asked, indeed *ordered*, to make positive changes in their lives so that the State may safely reunify them with their children. Not so with fit parents like Dr. Michael Adams! According to the majority opinion, no positive, rational change parents like him make in their lives after a final custody decree is entered will suffice to permit a circuit court to even reevaluate original custody terms. That is not the law, and it should not be the law.

I would affirm the circuit court's July 2020 order. The law and facts of record amply support the court's decision to modify the July 2019 order in the manner it did.

VIRDEN, J., joins.

**BART F. VIRDEN, Judge, dissenting.** "If the law supposes that," said Mr. Bumble, squeezing his hat emphatically in both hands, "the law is a ass — a idiot." Charles Dickens, *The Adventures of Oliver Twist* (Oxford Univ. Press 1970).

Keep in mind, the "ass" refers to a donkey, and Mr. Bumble and Dickens are saying an ass, a.k.a. a donkey, is stubborn and inflexible. Such a rigid application of the "change in circumstances" doctrine in this case produces the same analogy.

I join in the dissent and write separately simply to write . . . simply. Judge Harrison's dissent, which I join, is worthy of a law review article. My opinion is to more readily point out the practical absurdity that will result if we continue along this jurisprudential path mapped out by the majority. Allowing an incidental but accurate statement recited in a case to become a defining "rule" is not unique to our case at hand but should not bind us to a wrong decision. After all, custody and visitation are never "permanent" despite that term being used in various settings. Child custody is always subject to modification by the court. *Myers v. Myers*, 207 Ark. 169, 179 S.W.2d 865 (1944).

My point perhaps can best be made by way of two examples. Let's take Johnny Doe. Johnny got divorced. Johnny had a substance-abuse problem and could be somewhat unstable. As such, Johnny got little or no visitation as per court order. Johnny goes to rehab, goes to counseling, gets cleaned up. Johnny gets a good job, a stable home, and maybe remarries. Johnny asks for a change of custody or visitation. Under the "rule" as applied by the majority, Johnny is out of luck. All the positive reforms and changes in his life, even if

in the children's best interest, are in vain when it comes to custody and visitation. Why? Because he, himself, created those changes. Does that make sense?

Example number two. Mom and Dad are both good parents, but at the time of their divorce, mom had moved a good distance away from Dad. Joint custody could not work due to the unreasonable travel time it would impose on everyone, including and especially the children. As such, the trial court instituted a particular visitation schedule to lessen the impact but granted mom physical custody. Later, dad moves to a location closer to the children. In every other respect, nothing has changed. They are both fit and proper parents to share in raising the children. Dad seeks more time, or better yet, joint custody. The only impediment to his getting joint custody at the time of the divorce was the geographic distance between the parties. That impediment no longer exists, but by the majority's opinion, he loses because he "created the change in circumstances." Does that make sense? Oh, wait, that is the exact case before us.

I have no doubt that members of the majority felt constrained by precedent to reach the result they have. The majority opinion says as much. I would, however, grant to the trial court the great deference that we always do and affirm its decision. I respectfully dissent.

*Mann & Kemp, PLLC*, by: *Harrison Kemp*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellee.