Cite as 2020 Ark. App. 59

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-289

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** January 29, 2020 |
| LEAH HIGDON | | |
| | | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT |
| | APPELLANT | [NO. 46DR-10-307] |
| V. | | |
| | | HONORABLE CARLTON D. JONES, JUDGE |
| LYNN ROBERTS | | |
| | | AFFIRMED AS MODIFIED |
| | APPELLEE | |

**LARRY D. VAUGHT, Judge**

Leah Higdon appeals the order entered by the Miller County Circuit Court granting Lynn Roberts's motion for modification of child support and awarding him retroactive child support. Higdon argues that the circuit court's order is clearly erroneous because there is no material change of circumstances to support the modification. Alternatively, Higdon argues that the circuit court's retroactive child-support award was an abuse of discretion. We affirm as modified.

Higdon and Roberts were divorced on February 23, 2011. In the divorce decree, the circuit court granted the parties joint custody of their three minor children, AR1 (born December 18, 1995), AR2 (born July 29, 1999), and AR3 (born September 6, 2004). Higdon and Roberts were given alternating week-to-week custody of AR1 and AR2. Higdon was given primary custody of AR3 with Roberts having what the parties call "Texas extended visitation,"

which granted him visitation every other weekend from Thursday to Monday and visitation after school Thursday to Friday morning on alternate weeks. The parties were awarded two-week summer-possession periods with all three boys. Finally, the decree ordered Roberts to pay Higdon monthly child support of $900.

On November 11, 2015, the court entered an agreed order adopting the terms and conditions of a settlement agreement entered by the parties on March 18, 2014, following court-ordered mediation. The November 2015 agreed order provided that Higdon would continue to have custody of AR3, who was nine years old, until his eleventh birthday, after which the parties would alternate weekly custody of him; Roberts would have primary custody of AR2 with Higdon having standard visitation with him; no child support would be paid by either party; and each party would be responsible for paying one-half the children's expenses. The parties' 2015 agreed order further stated that issues pertaining to Higdon's claims for back child support and past-due medical expenses were reserved for a future hearing.

On April 19, 2017, the parties attended a hearing to address custody, child support, and Roberts's child-support arrearage. During the hearing, the parties announced to the circuit court that they had reached an agreement on all pending issues, and the terms of the settlement were read into the record. On August 1, the circuit court entered a second agreed order based on the April agreement of the parties finding that (1) AR1 had reached the age of majority; (2) AR2 will be permitted to choose with whom he would like to live because he will reach the age of majority in less than one year; (3) during the school year, Roberts will have custody of AR3 subject to Higdon's Texas extended visitation; (4) during the summer, the parties will alternate weekly custody of AR3; (5) neither party will pay child support; (6) each party shall

2

be responsible financially for AR3 while in their respective possession; and (7) Roberts will pay Higdon back child support in the amount of $5,400 in monthly payments of $200 until paid in full.

On July 10, 2018, Roberts filed a motion for modification of child support. Roberts alleged that because he has primary custody of AR3, he has borne the majority of AR3's expenses and therefore is entitled to child support from Higdon. On September 10, a hearing was held on Roberts's motion for modification of child support. Roberts testified that since April 2017, he has had primary custody of AR3, and because he has had more time with AR3, he has incurred more expenses on AR3's behalf.[1] Roberts testified that these increased expenses were the basis of his motion to modify child support.

Higdon argued at the hearing that there had been no material change of circumstances since the entry of the August 2017 agreed order that would support Roberts's request to modify child support. She testified that neither her job nor income had changed since that time. Regarding their agreement that was the basis of the August 2017 agreed order, she said she understood Roberts would have primary custody of AR3 and no party would pay child support, and in return, she forgave some of the back child support that Roberts owed her. Higdon also testified that when she has her Texas extended visitation with AR3, she also incurs expenses on his behalf. The circuit court took the matter under advisement.

On January 8, 2019, the circuit court issued an order granting Roberts's motion to modify child support:

---

[1]Roberts stated that since April 2017, he has spent approximately $4,400 on expenses related to AR3's sports, clothing, food, birthday, and school.

The Court has thoroughly reviewed the history of this case including all past orders of the Court. In the Decree of Divorce . . . the Court approved a joint custody arrangement whereby [Roberts] was ordered to pay child support and had specific times set for visitation of the children. In this arrangement, [Higdon] was in the role of the custodial parent, and [Roberts] was in the role of the non-custodial parent. Conversely, the result of the April 19, 2017 proceeding is an Agreed Order (entered on August 1, 2017) that placed the parties in the exact opposite position from the previous custody order. Thus, [Roberts] is now vested with the primary physical custody of [AR3], and [Higdon] is the non-custodial parent with a set visitation schedule. *The Court finds that a material change in circumstances warranting a modification of support now exists. Specifically, the Court finds that the testimony and evidence show[] that [AR3] now spends significantly more time in the home of [Roberts] thus causing more expense for the care of the child on [Roberts].*

(Emphasis added). The court then found that considering Higdon's affidavit of financial means, her monthly net pay is $1,648.38. Referring to Administrative Order No. 10, the court found that Higdon's biweekly child-support obligation is $267. The court further found that Higdon had an arrearage of child support and awarded Roberts retroactive support from May 1, 2017 (the first pay period after the April 19, 2017 hearing), to December 21, 2018, in the amount of $11,214. Higdon timely appealed this order.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Morgan v. Morgan*, 2018 Ark. App. 316, at 6, 552 S.W.3d 10, 15 (citing *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*, 552 S.W.3d at 15. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* at 6–7, 552 S.W.3d at 15. However, a circuit court's conclusion of law is given no deference on appeal. *Id.* at 7, 552 S.W.3d at 15.

In determining a reasonable amount of child support, the court shall refer to the most recent revision of the family-support chart. Ark. Code Ann. § 9-12-312(a)(3)(A) (Repl. 2015). It shall be a rebuttable presumption that the amount contained in the family-support chart is the correct amount of child support to be awarded. Ark. Code Ann. § 9-12-312(a)(3)(B). Only upon a written finding or a specific finding on the record that the application of the family-support chart would be unjust or inappropriate, as determined under established criteria set forth in the family-support chart, shall the presumption be rebutted. Ark. Code Ann. § 9-12-312(a)(3)(C). All orders granting or modifying child support (including agreed orders) shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the family-support chart. Ark. Sup. Ct. Admin. Order No. 10(I). If the order varies from the guidelines, it shall include a justification of why the order varies as may be permitted under section V hereinafter.

It is axiomatic that a change in circumstances must be shown before a court can modify an order for child support. *Morgan*, 2018 Ark. App. 316, at 16–17, 552 S.W.3d at 9. In addition, the party seeking modification has the burden of showing a change in circumstances. *Id.* at 17, 552 S.W.3d at 9. In determining whether there has been a change in circumstances to warrant an adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *Id.*, 552 S.W.3d at 9. We have made it clear that a finding that a material change in circumstances has occurred is subject to a clearly erroneous standard of review. *Id.*, 552 S.W.3d at 9.

Higdon's first argument on appeal is that the circuit court clearly erred in finding a material change in circumstances warranted a modification of child support. She contends that Roberts had the burden of showing a material change of circumstances occurred between the August 1, 2017 order (that embodied the parties' April 2017 agreement) and the time he moved for the modification, and he failed. She points out that neither party had changes in marital status, residence, occupations, or income during the relevant time. She contends that the only evidence Roberts presented in support of a material change in circumstances is that after the August 2017 agreed order was entered, he incurred more expenses related to AR3 because AR3 spent more time in Roberts's home. She argues that this is not a material change in circumstances following the August 2017 agreed order; rather, she argues, it is a circumstance Roberts bargained for in the August 2017 agreed order. We agree.

Roberts's agreement to have primary custody of AR3, which Roberts claims led to increased expenses for AR3, is not a material change of circumstance that occurred *after* the entry of the August 2017 agreed order. It was one of several agreements contained *within* the August 2017 agreed order and was known at that time. When a circuit court considers whether there has been a material change in circumstances, it considers the facts that have changed or were not known by the court when it entered the previous order. *Troutman v. Troutman*, 2017 Ark. 139, at 8, 516 S.W.3d 733, 738. Not only was the circumstance that Roberts would have more time with—and therefore more expenses for—AR3 known at the time of the entry of the August 2017 order, it was a circumstance that Roberts created by agreeing to it. Our supreme court has held, in the context of child-custody modification, that a party "cannot use the circumstances he [or she] created as grounds to modify custody." *Brown v. Brown*, 2012 Ark.

89, at 7, 387 S.W.3d 159, 163 (citing *Jones v. Jones*, 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996)). For these reasons, we hold that the circuit court clearly erred in finding Roberts's increased expenses due to his agreement to have primary custody of AR3 is a material change of circumstances.

We now turn to Roberts's alternative argument of why the circuit court's order should be affirmed. He argues that we must affirm the circuit court's order modifying child support because he established a statutory material change in circumstances as set forth in Arkansas Code Annotated section 9-14-107(c)(2) (Supp. 2019).

Section 9-14-107(c)(2) provides that a material change of circumstances is found to exist when there is an inconsistency between the existing support award and the amount of support that results from the application of the family-support chart, and no reasons are given to rebut the presumption that the guideline amount was correct. *Morgan*, 2018 Ark. App. 316, at 10–11, 552 S.W.3d at 17 (citing *Stevenson v. Stevenson*, 2011 Ark. App. 552). As a result of section 9-14-107(c), parties cannot with any security enter into agreements regarding child support that vary by even a small amount from the family-support chart. *Morgan*, 2018 Ark. App. 316, at 11, 552 S.W.3d at 17 (citing *Alfano v. Alfano*, 77 Ark. App. 62, 72 S.W.3d 104 (2002)). We have repeatedly stated, "Although there are numerous reasons why parties would enter into such agreements, counsel for such parties should consider setting out in the support order reasons for the variance that would constitute a 'rebuttal' of the chart and obtaining the approval of the circuit court before entering into such agreements in the future." *Id.*, 552 S.W.3d at 17–18 (citing *Alfano*, *supra*).

In *Stevenson* and *Alfano*, the parties agreed to the amount of child support set in the decrees, and the parties did not dispute that the amount deviated from the chart amount. It was also undisputed that the circuit courts in those cases failed to follow the correct procedures in deviating from the chart amount in that they failed to make a specific written finding, after considering all relevant factors, that the chart amount was inappropriate or unjust. In both cases, motions to modify child support were filed, and the appellees alleged that the court did not have to make the specific written findings because there was no material change of circumstances proved to support the child-support modifications sought. Our court rejected this argument in both cases, holding that pursuant to section 9-14-107(c), a material change of circumstances is found to exist when there is an inconsistency between the existing support award and the amount of support that results from the application of the family-support chart and no reasons are given to rebut the presumption that the guideline amount is correct. *Stevenson*, 2011 Ark. App. 552, at 5; *Alfano*, 77 Ark. App. at 69–70, 72 S.W.3d at 108–09; s*ee also Morgan*, *supra* (affirming the circuit court's modification of child support on the basis of a section 9-14-107(c) material change of circumstances).

The chart amount of Higdon's child support based on her income is $267 biweekly; however, the agreed order provided that she pay zero support. This inconsistency, without explanation, constitutes a material change in circumstances sufficient to petition the court for modification of child support. Ark. Code Ann. § 9-14-107(c)(2); *Alfano*, *supra*; *Stevenson*, *supra*; *Morgan*, *supra*. Accordingly, we affirm the circuit court's material-change-of-circumstance finding as it reached the right result albeit for the wrong reason. *Office of Child Support Enf't v. Pyron*, 363 Ark. 521, 528, 215 S.W.3d 637, 642 (2005) (citations omitted).

Higdon argues that Roberts did not raise this statutory argument below, and the circuit court did not rule on it; therefore, she contends that he cannot raise it for the first time on appeal. We agree that section 9-14-107 was never specifically mentioned below; however, we disagree that we are precluded from addressing the argument. Our review is not limited to those grounds elucidated by the circuit court in its opinion; rather, we may affirm for any reason that has been developed in the record. *Foust v. Montez-Torres*, 2015 Ark. 66, at 6 n.2, 456 S.W.3d 736, 739 n.2 (citing *Yanmar Co. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439; *Ark. Diagnostic Ctr., P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884 (2007)).

It is undisputed that *the* issue in this case—whether there was a material change of circumstances supporting Roberts's motion for child support—was presented to the circuit court. Moreover, the evidence required to support the application of the section 9-14-107(c)(2) material change in circumstances was developed at the hearing and is undisputed. That undisputed evidence includes (1) the August 2017 agreed order that awarded zero child support, (2) Higdon's chart amount of child support that is greater than zero, and (3) the agreed order that failed to include an explanation for the deviation. Therefore, under our de novo review, we hold that the evidence presented below raised, developed, and preserved the issue of the application of section 9-14-107(c)(2).

Higdon's second point on appeal is that if the child-support modification is affirmed, the circuit court abused its discretion in ordering her to pay Roberts child support retroactively to May 1, 2017. She contends that retroactive child support can be awarded—at the earliest— on July 10, 2018, the date Roberts filed his motion to modify child support.

9

The circuit court has discretion to set the amount of child support, and its findings in this area will not be disturbed absent an abuse of discretion. *Yell v. Yell*, 56 Ark. App. 176, 179, 939 S.W.2d 860, 862 (1997). Absent a specific finding of fraud in procuring an existing support decree, however, it is an abuse of discretion to impose a retroactive modification of a support order beyond the filing date of a petition to modify. *Id.*, 939 S.W.2d at 862 (citing Ark. Code Ann. § 9-14-234 (Supp. 1995); *Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 16 (1991); *Heflin v. Bell*, 52 Ark. App. 201, 916 S.W.2d 769 (1996)).

In the case at bar, the circuit court abused its discretion when it awarded retroactive child support to Roberts beyond the filing date of his motion to modify. Accordingly, we affirm the award of retroactive child support; however, we modify it to begin July 10, 2018, when the motion to modify child support was filed. *Cross v. Cross*, 2019 Ark. App. 100, at 4, 572 S.W.3d 407, 409.

Affirmed as modified.

KLAPPENBACH and HIXSON, JJ., agree.

*Unger Law Firm*, by: *Michael R. Unger*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Law Office of Amy Freeman*, by: *Amy Freeman*; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellee.