Cite as 2023 Ark. App. 314

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-22-384

|  |  |
|---|---|
| CASEY CATHEY<br><br>APPELLANT<br><br>V.<br><br>KARLEY ALTAZAN<br>APPELLEE | Opinion Delivered May 31, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60DR-14-1901]<br><br>HONORABLE CASEY R. TUCKER, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Casey Cathey appeals the circuit court order that increased his child-support obligation to $1323 a month. He argues that the circuit court erred in finding a material change of circumstances and in setting the amount of child support. We affirm the circuit court's order.

Cathey and Karley Altazan divorced on 19 June 2014. The divorce decree incorporated a custody, child-support, and property-settlement agreement, which provides that the parties share joint custody of their two children and that Cathey pay $750 a month in child support until the first child reaches eighteen years of age or graduates high school; child support will then drop to $375 a month until the second child reaches eighteen years of age or graduates high school.

In May 2021, Altazan moved to modify child support, asserting that a material change

of circumstances had occurred; specifically, that Cathey's income had increased in an amount greater than 20 percent or $100 a month since the decree. She asked the court to set child support according to his current income and to require him to pay child support on any unreported bonuses or extraordinary income he has received. Cathey responded that while his income had increased, so had Altazan's and that the increase in income is not the only consideration given that the parties share joint custody.

In January 2022, Cathey moved for summary judgment and argued that his income had not increased by the 20 percent required to constitute a material change of circumstances sufficient to petition the court for modification of child support. *See* Ark. Code Ann. § 9-14-107(a)(1) (Supp. 2021). He asserted that from 2014 to 2021, his income had increased by approximately 14.98 percent. In response, Altazan argued that Cathey has misstated the basis for a modification of child support; the statute provides that a change in income of either party of 20 percent is sufficient to meet the material-change-of-circumstances requirement. She also contended that the court should base modification of child support on the parties' 2013 income (the most recent tax year prior to the decree). Altazan claimed that from 2013 to 2021, her income had gone from $0 to $44,583, and Cathey's income had increased 35 percent.

The circuit court held a hearing on 22 February 2022. After briefly hearing arguments from counsel, the circuit court denied the motion for summary judgment and proceeded with receiving testimony from the parties. Altazan testified that she was unemployed at the time of the divorce but that she now worked as a paralegal. Her monthly income is $3,750 plus $750 in child support. She and Cathey evenly split the children's

2

expenses, including extracurricular activities, school expenses, and medical expenses. Their daughter's volleyball expenses are significant: $3,000 tuition, $400 uniform, and travel expenses. She and Cathey share the tuition and uniform expenses but pay for their own travel expenses. Altazan introduced a child-support worksheet using Cathey's current income, which showed that his presumptive child-support amount is $2,040 if his yearly bonus is also included. Altazan said she was unable to pay for all of the children's expenses with $750 a month.

On cross-examination, Altazan acknowledged that Cathey had remarried and has another child. She agreed that Cathey pays for their daughter's cell phone and for health insurance for both their children. She also agreed that she listed monthly expenses of $2,756 a month in her affidavit of financial means, but she explained that she had not included the extracurricular activities and other expenses for the children.

Cathey testified that his current annual salary is $196,100 annually. He clarified that his yearly bonus is actually an at-risk "performance compensation" based on customer satisfaction, reliability metrics, and budget. He agreed that his 2021 bonus was $56,000 and that he had not yet received his 2022 bonus. When the divorce decree was entered in 2014, Cathey's income was roughly $215,000; in 2020, his income was $227,321; and in 2021, his income increased to $247,326. He denied this was a 20 percent increase from his income at the time of the decree. He also said that his expenses had increased due to his remarriage and having another child.

Cathey pays for a family plan on his health insurance to cover the children and contributes to a savings account for the children's college expenses. He submitted a

3

summary showing that he pays $2,379.87 in monthly expenses for the children. Regarding volleyball travel expenses, he agreed it depends on the schedule, but over the past few years the majority of travel weekends fell on his visitation weekends. He also anticipated future expenses of a vehicle and car insurance for both children. He disagreed that Altazan incurs the same expenses as him, but he did agree that they both pay for expenses such as food and housing, clothes and shoes, and school supplies.

At the conclusion of the hearing, the court announced that a modification in child support was warranted. The court's reasoning, as stated in its written order, is as follows.

7.   The law in effect at the time of Defendant's motion provided that a change in income of the payor equal to twenty percent (20%) or $100.00 is a material change of circumstances for purposes of modifying child support.

8.   The law in effect as of the date of the hearing provides that a change of income of either party in amount greater than twenty percent (20%) is a material change of circumstances for purposes of modifying child support.

9.   Both parties have experienced an increase in income since entry of the Decree in 2014. The parties agree that Plaintiff's income has increased by greater than $100.00 per month. Plaintiff's income is not stated in the Decree, so the Court does not make a determination about Plaintiff's income at that time and thus cannot determine the percentage increase in Plaintiff's income. However, Defendant's income undisputedly increased by greater than twenty percent (20%) and provides an adequate basis for modification of child support.

10.  The Court also notes that both parties have an increase in expenses for the children, specifically their daughter's volleyball expenses, which was not contemplated in the Decree.

11.  The parties have a significant disparity in income, even without including Plaintiff's bonus.

12.  The Court finds that Plaintiff's gross monthly income equals $16,469.20 and Defendant's gross monthly income equals $3,715.25.

4

The parties' total income available for support equals $20,184.45. The total child support obligation equals $2,206.00, [f]or which Plaintiff is responsible for 81.59% or $1,799.88, and Defendant is responsible for 18.41% or $406.12. Plaintiff provides health insurance for the children at a cost of $190.10 per month. After adjustment for health insurance expenses, Plaintiff's presumptive child support obligation is $1,764.88 and Defendant's presumptive child support obligation is $441.12. A copy of the child support worksheet is attached as Exhibit A.

13. Plaintiff shall pay $1,323.00 per month in child support. This support amount is the difference between Plaintiff's presumptive support amount and Defendant's presumptive support amount. The Court has included a deviation based upon the joint custody of the children and the like expenses each party must incur for the children.

14. Plaintiff receives additional income in the form of an at-risk performance compensation or bonus. This amount fluctuates each year. Therefore, the Court did not include this amount in the regular monthly support obligation. Plaintiff shall pay to Defendant eight percent (8%) of the gross of his performance compensation or bonus. Plaintiff's regular child support obligation set forth herein equals eight percent (8%) of his regular income. The Court uses the same percentage for support on bonus income. This payment shall be made within thirty (30) days of receipt of such income.

The court found the modification effective as of 17 May 2021, the date of Altazan's motion to modify support, and ordered Cathey to pay an arrearage of $5,157 by paying an additional $265 a month until the arrears is satisfied. Cathey has timely appealed the circuit court's order.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Symanietz v. Symanietz*, 2021 Ark. 75, 620 S.W.3d 518. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id*. In a child-support determination, the amount of child support lies within the sound discretion of the

5

circuit court, and that court's findings will not be reversed absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). However, a circuit court's conclusions of law are given no deference on appeal. *Id.*

Supreme Court Administrative Order No. 10 mandates that circuit courts use the "Income Shares Model" adopted by the Arkansas Supreme Court in *In re Implementation of Revised Administrative Order No. 10*, 2020 Ark. 131 (per curiam), which became effective on June 30, 2020.[1] This model considers the incomes of both parties instead of basing child support solely on the payor's income. Section I of Admin. Order No. 10 states that the Income Shares Model is based on the concept that children should receive the same proportion of parental income that they would have received had the parents lived together and shared financial resources. Section I provides further that under the revised "Family Support Chart," each parent's share is that parent's prorated share of the two parents' combined income, subject to certain deviations or adjustments. Pursuant to section II, there is a rebuttable presumption that the chart-derived amount is the amount to be awarded.

Section V, paragraph 1, sets out the relevant procedure:

> [T]he gross income of both parents shall first be determined and combined. Each parent's share of the combined total gross income is then determined based on their percentage of the combined income. Next, the basic child-support obligation is determined by looking at the Chart for the parties' combined income and the number of children they have. A presumptive child-support obligation is then determined by adding the allowed additional monthly child-rearing expenses (including health insurance premiums, extraordinary medical expenses, and childcare expenses). Each parent's share of additional child-rearing expenses is determined by

[1]Administrative Order No. 10 was revised on October 6, 2022; however, the version of Administrative Order No. 10 applicable in this case is the version set forth in *In re Implementation of Revised Administrative Order No. 10, supra*, which we will refer to herein simply as "Admin. Order No. 10."

6

multiplying the percentage of income they have available for support, which was determined in step 1. The total child-support obligation for each parent is determined by adding each parent's share of child-support obligation with their share of allowed additional child-rearing expenses. Lastly, the payor receives a credit for the additional child-rearing expenses that the payor is paying out of pocket, resulting in their presumed child-support order.

Further, section II, paragraph 2, provides that if an order deviates from the chart amount, the order must explain the reason(s) for the deviation in writing, considering all relevant factors, including what is in the children's best interest. In making a deviation, the court should consider the following factors:

a. Educational expenses for the child(ren) (i.e., those incurred for private or parochial schools, or other schools where there are tuition or related costs) and/or the provision or payment of special education needs or expenses for the child(ren);

b. The procurement and/or maintenance of life insurance, dental insurance, and/or other insurance for the children's benefit (for health insurance premiums, see Section II.2 infra);

c. Extraordinary travel expenses for court-ordered visitation;

d. Significant available income of the child(ren);

e. The creation or maintenance of a trust fund for the children;

f. The support given by a parent for minor children in the absence of a court order;

g. Extraordinary time spent with the payor parent;

h. Additional expenses incurred because of natural or adopted children living in the home, including stepchildren if the court finds there is a court-ordered responsibility to a stepchild;

i. The provision for payment of work-related childcare, extraordinary medical expenses for the child in excess of $250.00 per year per child, and/or health insurance premiums. Ordinarily these expenses will be divided pro rata between the parents and added to the base child support of the payor parent on the Worksheet. In that scenario, it shall

7

not support a deviation. However, if the court chooses not to add them in the total child-support obligation, they could support a deviation; and

j.  Any other factors that warrant a deviation.

Ark. Sup. Ct. Admin. Order No. 10(II)(2).  Finally, in cases of joint custody, the following guidance is provided:

> In cases of joint or shared custody, where both parents have responsibility of the child(ren) for at least 141 overnights per calendar year, the parties shall complete the Worksheet and Affidavit of Financial Means as they would in any other support case.  The court may then consider the time spent by the child(ren) with the payor parent as a basis for adjusting the child–support amount from the amount determined on the Worksheet.  In particular, in deciding whether to apply an additional credit, the court should consider the presence and amount of disparity between the income of the parties, giving more weight to those disparities in the parties' income of less than 20% and considering which parent is responsible for the majority of the non-duplicated fixed expenditures, such as routine clothing costs, costs for extracurricular activities, school supplies, and any other similar non-duplicated fixed expenditures.

Ark. Sup. Ct. Admin. Order No. 10(V)(2).  A footnote to this paragraph explains, "The Guidelines intend for the court to deviate (in an amount to be determined) on a case-by-case basis when the payor parent has more than 141 nights with a child(ren).  This discretionary deviation shall also apply when the parents each have the child(ren) for approximately 50% of the time." *Id*. No. 10(V)(2) n.3.

### I.  *Material Change of Circumstances*

Cathey first argues that the circuit court erred in finding that there had been a material change of circumstances to warrant a modification.  Arkansas Code Annotated section 9-14-107(a)(1) dictates that "[a] change in the gross income of the payor or payee parent in an amount equal to or more than twenty percent (20%) shall constitute a material

8

change of circumstances sufficient to petition the court for modification of child support." Altazan's basis for modifying child support was that Cathey's income had increased, not her own income, and Cathey argues, as he did below that his income had only increased 15 percent between 2014 and 2021. He also asserts, however, that even if she had properly pled the basis of her own increased income, this change only met the threshold requirement for filing a motion to modify, and the change was one that should have resulted in a decrease, not an increase, in Cathey's child support.

In determining whether there has been a change in circumstances to warrant an adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *Higdon v. Roberts*, 2020 Ark. App. 59, 595 S.W.3d 19. Cathey contends the evidence showed that Altazan's income had increased significantly and that Cathey had remarried, had another child, and had increased financial obligations. Aside from these changes, neither party introduced evidence warranting an increase in child support.

In response, Altazan argues that she met her burden of showing a material change of circumstances based on both the statutory definitions in Ark. Code Ann. § 9-14-107(a) and (c) as well as a factor-based analysis. As to subsection (a), which requires showing a change in the gross income of the payor or payee parent in an amount equal to or more than 20 percent, she notes that the circuit court specifically found that her income "undisputedly increased by greater than twenty percent (20%) and provides an adequate basis for

9

modification of child support." She disagrees that because an increase in her own income was not initially pled, the court could not find a material change of circumstances on that basis. She points out that Cathey's own responsive pleading alleged that her income had increased and that the parties had tried the issue by consent.

Section 9-14-107(c)(2) provides that an inconsistency between the existing child-support award and the amount of child support that results from application of the family support chart shall constitute a material change of circumstances sufficient to petition the court for modification of child support (unless certain exceptions apply). Altazan argues that the parties' divorce decree is facially deficient because it failed to recite both parties' incomes, the presumed child-support amount, and the reason, if any, for deviation from the presumed child-support amount. Here, the circuit court could not address the percentage change in Cathey's income, because the decree simply stated that Cathey will pay $750 a month based on the parties' incomes and joint custody. Altazan asserts that Cathey's presumed child support under the family support chart effective on 14 June 2014 would have been approximately $3,000 a month—significantly higher than the $750 ordered in the decree. The circuit court could therefore modify support pursuant to Ark. Code Ann. § 9-14-107(c)(2).

Finally, as stated above, in determining whether there has been a change of circumstances warranting a modification of support, the circuit court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the

10

child-support chart. *Higdon, supra.* Even if the payor's income has not changed that much, there may still be a material change of circumstances based on other factors. *Johnson v. Young*, 2017 Ark. App. 132, 515 S.W.3d 159. Altazan implies that consideration of these factors and others, including an increase in needs and expenses for the children, can constitute a material change of circumstances warranting a modification of child support.

The circuit court's order indicates that it found an increase in income by both parties and an increase in expenses for the children, specifically their daughter's volleyball expenses, as material changes of circumstances warranting modification of child support. We hold that the circuit court did not clearly err in making this finding.

## II. *Amount of Child Support*

Cathey also asserts that the circuit court abused its discretion in setting the amount of child support. He explains that the court adopted defendant's exhibit No. 4 as the appropriate child-support worksheet; this worksheet reflects Cathey's presumed child support as $1,764.88 and Altazan's presumed child support as $441.12.[2] The circuit court then subtracted Altazan's obligation from Cathey's obligation to arrive at $1,323, the monthly amount set by the court. Cathey argues that pursuant to Admin. Order No. 10, this method for determining support is for split-custody situations, not joint-custody situations. As noted above, in joint-custody arrangements, the Guidelines intend for the court to deviate (in an amount to be determined) on a case-by-case basis when the payor parent has more than 141 nights with the child(ren). This discretionary deviation shall also apply when the parents each have the child(ren) for approximately 50 percent of the time.

---

[2]On this worksheet, Cathey's yearly bonus is not included as part of his income.

11

Thus, Cathey argues, the circuit court committed a clear error of law in applying the wrong analysis in determining support.

The circuit court also reasoned that there should be a deviation, in part because each party was incurring like expenses, and the court rejected Cathey's request to consider a deviation for expenses he agreed to pay under the decree (college savings accounts, life insurance, health insurance premiums). Cathey contends that it was an error of law to ignore these specific factors that Admin. Order No. 10 clearly sets forth as a basis for deviation and that the circuit court clearly erred in finding that the parties were incurring like expenses.

According to the evidence at the hearing, Cathey had a total monthly obligation of $2,379.87; of that amount, $1,140.79 were expenses paid only by him and not by Altazan ($49.52 for their daughter's cell phone, $51.17 for life insurance benefiting the minor children, $100 for 529 education-plan contributions for the children, $190.10 for the children's health insurance premiums, and $750 for child support). This leaves only $1,239.08 in expenses that Cathey incurs that Altazan may share in some amount. Further, even assuming Altazan's expenses were the same, she receives child support of $750, leaving only $489.08 as her responsibility for the children's expenses. Cathey speculates that her portion of the expenses is even less because, while the type of expenses may be duplicated by Altazan, the amounts paid by her varies from Cathey. For example, Cathey provided evidence showing that since 2019, he incurred the large majority (thirteen out of seventeen weekends) of the travel costs associated with volleyball.

In addition, the only testimony that the children's expenses had increased related to

volleyball expenses, and while Altazan did not present evidence of these expenses, Cathey did. On a monthly average, the volleyball fees, equipment, and travel amounted to $209.49 a month (with Cathey historically paying over 76 percent of the travel hotel cost). Cathey argues that instead of simply increasing the amount of support by $209.49 (or half this amount), the circuit court arbitrarily increased his support to $1,323 a month in addition to 8 percent of his performance compensation. He contends that the increase in support has resulted in him providing more than the entirety of the financial support for the children while they are in his care and while they are in Altazan's care.

Cathey also notes that the primary expense (and the only one specified) that the court found had increased was the competitive volleyball expenses. The divorce decree did not require that he and Altazan divide extracurricular activity expenses; they had agreed to split this expense equally. Also, their daughter could quit playing volleyball in the competitive league at any time, thus eliminating the expense and the primary basis for the modification. Cathey contends that the circuit court clearly erred by relying on this one primary expense that both parties willingly agreed to pay one-half of as the basis for the modification.

Altazan counters that the circuit court awarded the correct and reasonable amount of child support using the 2020 revised child support guidelines and the required child-support worksheet. The court then used its discretion and deviated—in an amount determined by subtracting Altazan's presumptive support amount from Cathey's presumptive support amount—from the presumed support amount to address the parties' joint custody, shared expenses, and disparity in income. She disagrees that the circuit court erred in offsetting the parties' respective support obligations and notes that the latest revised

13

version of Admin. Order No. 10 provides that exact method in determining support in joint-custody cases. Altazan contends that the circuit court applied the law in effect at the time and reasonably exercised its discretion in determining the amount of child support.

We hold that the circuit court did not abuse its discretion in setting the amount of child support. While the method employed by the circuit court specifically applied to split custody in the guidelines at the time, the circuit court was not barred from using this method to determine the child-support amount in this case. Further, there was evidence to support the court's finding that the parties incurred like expenses.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*James, House, Swann & Downing, P.A.*, by: *Kayla M. Applegate*, for appellant.

*Mann & Kemp, PLLC*, by: *Angela Mann*, for appellee.